Helen DeBRECENI, etc.,
Plaintiff, Appellant,

v.

GRAF BROTHERS LEASING, INC., et al., Defendants, Appellees.

No. 87–1198.

United States Court of Appeals,
First Circuit.

Heard July 31, 1987.
Decided Sept. 18, 1987.

James T. Grady with whom Gabriel O. Dumont, Jr., and Grady, Dumont & Dwyer, Boston, Mass., were on brief, for plaintiff, appellant.

Michael B. Roitman with whom Jennifer W. Catlin and Fine & Ambrogne, Boston, Mass., were on brief, for defendants, appellees.

Robert D. City and Robert J. Owens Associates, P.C., Boston, Mass., on brief, for Arthur W. Heidke & Sons, Inc., amicus curiae.

Before BOWNES, TORRUELLA and SELYA, Circuit Judges.

TORRUELLA, Circuit Judge.

■ This case presents the question whether a corporate shareholder or officer may be held personally liable for the withdrawal liability mandated by Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1381 *et seq.*, by the application of an "economic reality" test similar to that used in cases decided under the Fair Labor Standards Act, 29 U.S.C. § 206, *see Donovan v. Agnew,* 712 F.2d 1509 (1st Cir.1983), or whether the standard should be the more stringent test generally required to "pierce the corporate veil." *See, e.g., Alman v. Danin,* 801 F.2d 1 (1st Cir.1986). We conclude that under the general purposes of the Multi-Employer Pension Plan Amendments Act of 1980 ("MPPAA") individual liability for corporate withdrawal liability should be governed by general principles of corporate law. *Accord Connors v. P & M Coal Co.,* 801 F.2d 1373 (D.C.Cir.1986).

*Background*

Graf Brothers Leasing, Inc. ("Graf Brothers") was a trucking business incorporated in 1951 by F. William Graf ("Graf") and his brother. Graf held 80% of the stock in Graf Brothers beginning in 1965 and became the sole owner in March 1981. The company made money through the '70s, but business deteriorated toward the end of the decade, so that by 1981 the company was in serious financial straits. By then Graf Brothers owed hundreds of thousands of dollars to the New England Teamsters and Trucking Industry Pension Fund, to which it had been a contributor on behalf of its truck drivers since 1970.

From at least 1979 forward Graf was in day-to-day control of the corporation, deciding what debts to pay and attempting to keep the company going. In October 1981 he sought protection for Graf Brothers under Chapter 11 of the Bankruptcy Code and then operated Graf Brothers as a debtor in possession. His attempts to save the company failed, however, and the company ceased operations on December 31, 1981, thereby withdrawing from the Pension Fund. The Pension Fund then assessed a withdrawal liability of over $1 million, of which only $175,000 was recovered when Graf Brothers entered into a Chapter 7 liquidation.

■ The Pension Fund then brought this action seeking, *inter alia,* to recover the balance of the withdrawal liability from Graf personally. The Fund stipulated that it could not adduce facts which would war-

rant piercing the corporate veil, but rather attempting to recover on a theory of broader liability. The District Court for the District of Massachusetts granted summary judgment for Graf, holding that "an individual may be held personally liable for a corporation's withdrawal payments [only] if the circumstances require piercing the corporate veil under traditional common law purposes." *DeBreceni v. Graf Brothers Leasing*, No. 85–3386, slip op. at 9 (D.Mass., January 23, 1987) [Available on WESTLAW, DCT database].

### Discussion

This case turns on the definition of "employer" under Title IV of ERISA, which governs withdrawal liability. *See* 29 U.S.C. § 1381 *et seq.* If Graf is an "employer" then he is jointly liable with Graf Brothers for the withdrawal payments. The trustee of the Pension Fund stipulates that she does not allege that Graf Brothers Leasing was Graf's alter ego under a common law piercing-the-corporate-veil theory. To recover on that theory she would have to prove: "the small respect paid by the shareholders themselves to [Graf Brothers] separate corporate identity; the fraudulent intent of the incorporators; and the degree of injustice that would be visited on the litigants by recognizing the corporate identity." *Alman v. Danin*, 801 F.2d at 4. She contends, rather, that Graf is an employer under the "economic reality test" applied in cases decided under the FLSA, which would permit personal liability solely because Graf maintained "virtually complete control of the day to day operations of Graf Bros." Appellants Brief at 19.

We begin with the observation that the principle of limited liability is a cornerstone of corporate law. 13A Fletcher, *Cyclopedia Corporations*, § 6213 at 16–18 (1984). Limited liability allows individuals to take a calculated risk when they engage in the investment and entrepreneurial ventures central to a capitalist economy. If the venture fails, corporate shareholders lose only their interest in the corporation, not their homes or life savings. Of course, the principle of limited liability has itself been limited by the common law doctrine which permits the piercing of the corporate veil and by statutory exception, *see, e.g.,* 26 U.S.C. §§ 7512, 7215 (making the person "required to collect, account for and pay over any tax" liable for nonpayment), but we have here neither an explicit statutory exception nor an allegation that the corporate form was ignored.

We have instead a statute that, on its face, does nothing to alter the principle of limited liability, but that appellant urges us should nevertheless be read to do so. The Fund's case for extending "employer" liability to controlling shareholders and officers proceeds along two tracks. The first, which we leave aside for now, is that extending liability promotes the goals of the MPPAA and that we should assist those goals through an act of interpretation. The second is that Congress actually extended liability, or at least meant to, when enacting the MPPAA.

This Congressional intention argument has two steps. The trustee argues first, that the definition of employer in subchapter I of ERISA, which governs ongoing pension contributions, sweeps controlling officers and shareholders like Graf into its net; and second, that the MPPAA made the subchapter I definition applicable to the withdrawal liability provisions in subchapter III of ERISA, notwithstanding subchapter I's admonition that its definitions are "for purposes of this subchapter." 29 U.S.C. § 1002. Our examination of the MPPAA, however, does not reveal an intent to apply the subchapter I definition of "employer" to subchapter III.

The MPPAA amended both subchapter I and subchapter III of ERISA. The MPPAA used the word "employer" in amending both subchapters, without defining the word and without making any reference to the subchapter I definition of employer. From this silence the trustee urges that we find an intention that the word "employer" mean the same thing each time it is used in the MPPAA, and that the meaning should be the ERISA subchapter I meaning. It is clear, however, that the silence was intended to leave the word "employer" alone, allowing it to

take its meaning from the statute that is being amended—ERISA. And ERISA, for whatever reason, defines the word "employer" only for subchapter I.[1] Defining its meaning for subchapter III is up to the courts. *Cf. Robinson v. C.I.R.*, 805 F.2d 38, 40 (1st Cir.1986).[2]

■ This conclusion brings us back to what the Trustee is really asking us to do: to define the word "employer" to include controlling shareholders and officers. We decline, for the following reasons.

First, as mentioned before, the principle of limited liability for corporate debts is longstanding enough and important enough to be considered a background norm, against which Congress may act of course, but which is controlling in the absence of such action. *See Connors v. P & M Coal Co.*, 801 F.2d at 1376. In deciding whether Congress has acted to expand liability "federal courts will look closely at the purpose of the federal statute to determine whether the statute places importance on the corporate form...." *Town of Brookline v. Gorsuch*, 667 F.2d 215, 221 (1st Cir.1981) (citations omitted). The MPPAA does not on its face indicate any intention to treat corporate debts for withdrawal liability different from any other corporate debts. The way that one could have expected Congress to make such an intention felt was through a definition of the word "employer." Yet Congress did not define the word in the MPPAA. Nor did Congress provide an applicable definition in ERISA.

Furthermore, the purposes of the MPPAA, as described in the legislative history of that act, would not be served by an extension of personal liability for corporate withdrawal payments. The Act represents a balance between efforts to protect existing pension plan beneficiaries through a short term strategy of imposing burdens on current employer contributors and through a long term strategy of encouraging new employers to contribute to multiemployer pension funds. *See* H.R. No. 96–869, 96th Cong., 2d Sess., *reprinted in* 1980 U.S.Code Cong. & Admin.News at 2918, 2919–20, 2935. Imposing personal liability for withdrawal payments would hurt that long term strategy by discouraging controlling individuals from directing their corporations to participate in multiemployer pension funds.

Withdrawal liability under the MPPAA is quite different than payroll taxes under the Social Security Act and minimum wage payments under the Fair Labor Standards Act, two corporate debts for which controlling shareholders and officers can be held liable. *See Donovan v. Agnew*, 712 F.2d at 1511; *United States v. McMullen*, 516 F.2d 917, 920 (7th Cir.1975) (26 U.S.C. § 7512 imposes liability for payroll taxes on person with control over corporations affairs). Payroll taxes and minimum wage payments are liabilities which a corporation can choose to pay or not pay. A decision to forgo paying payroll taxes or wages is a conscious decision to prefer some creditors over the government or the corporation's employees. Corporations do not have the same control over withdrawal liability payments, especially in the context in which shareholder and officer liability is most likely to be relevant: bankruptcy. Withdrawal liability is not assessed until an employer "withdraws" from the pension plan, by ceasing to do business for instance. If the liabilities of the employer corporation exceed its assets, which is the

---

1. In *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 370 n. 14, 100 S.Ct. 1723, 1731 n. 14, 64 L.Ed.2d 354 (1980), the Supreme Court noted that Congress made some Title I (subchapter I in the Code) definitions applicable to Title IV (part of subchapter III in the Code), *see, e.g.,* 29 U.S.C. § 1321(a)(1). "This specific incorporation suggests that Title I definitions do not apply elsewhere in the Act of their own force...." *Id.*

2. We do not reach the question whether the subchapter I definition includes controlling officers or shareholders, a question which has occasioned considerable litigation, and difference of opinion. *Compare, e.g., Solomon v. Klein*, 770 F.2d 352, 354 (3d Cir.1985) (controlling shareholder and officer not an "employer") *with, e.g., Mass. State Carpenters Pension Fund v. Atlantic Diving Co., Inc.*, 635 F.Supp. 9, 13–14 (D.Mass. 1984) (controlling shareholder or officer may be "employer"). We reserve this question for a case in which it makes a difference in the outcome.

likely condition when a pension fund seeks to recover against officers or shareholders personally, the corporation will enter into bankruptcy proceedings, thereby losing control over which creditors receive payments.

Given the control corporations have over payroll taxes and wages, personal liability for those debts should rarely have actually assessed. The *threat* of personal liability should be enough to induce the individuals who control corporations to prefer the IRS and employee creditors over other creditors in times of financial difficulty. If not, the individuals controlling the corporation accept a known risk. Personal liability for withdrawal payments, on the other hand, cannot be similarly avoided. This personal liability may well force corporations to more extreme efforts to avoid bankruptcy, but any benefit is likely to be marginal, since controlling shareholders can be expected to attempt to avoid bankruptcy generally, in the hope of obtaining some return on their investment. Rather than a rarely exercised threat that induces a desired behavior, personal liability for withdrawal payments would be a routine accompaniment to corporate bankruptcy proceedings. This personal liability would discourage controlling shareholders and officers from directing their corporations to contribute to multi-employer pension plans, thereby making it less likely that their employees will receive pension benefits. In the long run, personal liability would hurt even those employees who are already beneficiaries of multi-employer pension plans, because the vitality of those plans depends on new employers contributing to them. *See* House Report, 1980 U.S.Code Cong. & Admin. News at 2919–20, 2935.

The decision of the district court is *affirmed.*