Carmen **GAMBINO, et al., Plaintiffs,**

v.

**INDEX SALES CORPORATION, et al., Defendants.**

No. 87 C 3998.

United States District Court, N.D. Illinois, E.D.

Nov. 23, 1987.

James E. Sykes, Richard A. Cowen, Cowen, Crowley, Nord & Doane, Chicago, for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Carmen Gambino ("Gambino") and his fellow trustees (collectively "Trustees") of the Graphic Arts Industry Joint Pension Trust ("Trust") have sued Index Sales Corporation ("Index") and Donald Keenan ("Keenan") for unpaid and delinquent contributions to Trust, an employee benefit plan under Employment Retirement Income Security Act ("ERISA"). In response to Trustees' motion for summary judgment, Index admits liability while Keenan (who has filed a cross-motion for summary judgment) disputes his own individual responsibility for the delinquent contributions. For the reasons stated in this memorandum opinion and order, summary judgment as to liability and as to the principal amount due is granted against both Index and Keenan, subject to further proof as to the amounts to be awarded over and above the delinquent contributions themselves.

### Facts [1]

Index is an employer signatory to the collective bargaining agreement ("CBA") negotiated between Union Employers Association of the Printing Industry of Illinois and Local 458 of the Graphic Communications International Union, AFL–CIO. Keenan—who is Index's President, Director and sole stockholder—is not.[2] Under the CBA each employer is bound to the Trust Agreement establishing Trust and is obligated to make periodic contributions to Trust. Trustees' rule as to delinquent payments (a rule authorized by CBA Art. 40,

Michael H. Slutsky, Wesley Kennedy, George W. Terrell, Jr., Cotton, Watt, Jones & King, Chicago, for plaintiffs.

1. Except for a dispute between the parties as to the admissibility of Gambino's Supplemental Affidavit (of which more later), they have no quarrel as to the operative facts. What is at issue is the legal consequences of those facts. Accordingly the text statement of facts is summary rather than fact-specific in nature.

2. Keenan signed the CBA on Index's behalf and (as stated hereafter in this section of this opinion) also acted on behalf of Index in all matters pertaining to employee relations, including employee benefits. There is nothing to counter defendants' contention that all such actions were taken in Keenan's representative capacity, not individually.

§ 4 and Trust Agreement Art. VII, § 4) provides in part:

3. In the event the Plan is compelled to commence litigation to collect the unpaid contributions, then the delinquent employer shall, in addition to payment of such contribution and interest referred to above, be liable for costs, attorneys' fees and liquidated damages in an amount equal to the greater [sic] of:

(a) An amount determined the same as interest in paragraph 2 above [2% over the prime rate as published in the *Wall Street Journal*]; or

(b) 20% of the unpaid contribution; or

(c) Such higher percentage as may be permitted under federal or state law.

Index is concededly delinquent in its contributions. Though the parties began with a dispute as to the principal amount of the delinquency, Trustees have now accepted defendants' contentions (1) that the month of November 1984 is not included in the delinquent category (R. Mem. 2 n. 1) and (2) that the past-due delinquency from March 1985 through May 1987 aggregates $12,416.84 in principal amount (R. Mem. 13).

Index has been in existence and operation for more than 60 years, and it has all the hallmarks of corporate regularity. There is no factual basis for "piercing the corporate veil" under common-law principles calling that doctrine into play—Keenan's affidavit establishes that, and Trustees do not dispute it. However, it is equally undisputed (from both Keenan's and Gambino's affidavits) that Keenan has been and is Index' Chief Operating Officer, having not only technical responsibility over but also actually carrying out all of Index' labor relations and all its negotiations with Trustees and their representatives as to the CBA and Trust, all corporate operations and affairs, all corporate financial transactions and decisions and all matters relating to Trust (including the making of, and the failure to make, contributions).

### *"Employer" Under ERISA*

ERISA imposes liability for employee benefit plan contributions on "employers." This Court is called on to determine whether an individual such as Keenan—not directly an "employer" in the conventional sense—may nonetheless be an "employer" in statutory terms. For that purpose two statutory definitions (respectively Sections 1002(5) and 1002(9) [3]) become relevant:

(5) The term "employer" means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity.

(9) The term "person" means an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization.

It is frankly astonishing to discover the paucity of decisions that have considered whether individuals exercising principal or sole control over corporate employers may or may not be held personally responsible for their corporations' ERISA contributions, on the ground that such individuals are or are not themselves statutory "employers" under ERISA. Especially in times of economic stress with failing corporate businesses, the vulnerability of individual officers, directors or stockholders to such personal liability must assume major significance. Yet the judicial decisions are scarce enough to impose no burden of retrieval on the Lexis or Westlaw user.

All courts that have considered the different question of corporate veil piercing in the ERISA context have had no difficulty in attaching personal liability for delinquent contributions to individuals who are vulnerable to that kind of common-law liability for *all* obligations of their corporations—hardly a surprising result. But absent that common-law predicate for liabili-

---

**3.** These citations, like other citations to ERISA, employ the numbering in Title 29 rather than ERISA's internal numbering.

ty, the few courts that have examined the exposure of individual controlling persons for such delinquencies have split on the issue.[4] No Court of Appeals decision has imposed such liability to a broader extent (though for reasons discussed later in this opinion the First Circuit must be viewed as having pointed the way to that result in *Donovan v. Agnew*, 712 F.2d 1509, 1514 (1st Cir.1983)), while the Third Circuit (*Solomon v. Klein*, 770 F.2d 352, 354 (3d Cir. 1985)) and the Ninth Circuit (e.g., *Operating Engineers Pension Fund v. Reid*, 726 F.2d 513, 515 (9th Cir.1984)) have rejected personal liability except where traditional grounds are present for piercing the corporate veil.[5] Because our own Court of Appeals has not been called upon to address the issue, this Court really writes on a clean slate.[6]

■ Before this opinion turns to the effect of Section 1002(5) on the personal liability question, one issue not identified by the litigants—or, so far as this Court is aware, discussed by any of the reported decisions—should be mentioned. If read in purely literal terms, Section 1145 might be viewed as requiring payment only by the entity that has *signed* a CBA:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

But such a reading (1) would allow no room at all for the Section 1002(5) definition of "employer" to include persons "acting indirectly ... in the interest of an employer" and (2) would not permit even corporate veil piercing, which every court to have considered the issue has found a predicate for imposing personal liability. After all, the corporate "employer" that is obligated to make contributions because it signs a CBA is by definition "acting directly as an employer." To limit ERISA liability solely to that signatory would render the enactment of the ensuing statutory language ("acting ... indirectly in the interest of an employer") a nullity. And it is not simply a principle of statutory construction to say Congress will not be considered to have

---

4. District courts in the First Circuit have consistently held such personal liability existed. Reported decisions from district courts elsewhere have held otherwise, though Trustees' counsel has just provided this Court with an unpublished opinion by Judge Robert Warren (*Building Trades United Pension Trust Fund v. Peters*, No. 85 C 1391, slip op. (E.D.Wis. July 15, 1987)) [Available on WESTLAW, 1987 WL 29330] following the First Circuit's pattern. Because Trustees' counsel had just become aware of that decision, he properly sent it on without argument, though all briefing on the current motion had been completed. But defendants' counsel was out of order in then sending this Court (with a copy to opposing counsel, of course) a November 19 letter that amounted to an unbidden memorandum, containing further argument on the merits of the motion. On that score, see Fed.R.App.P. 28(j), which outlines the wholly neutral course of conduct counsel should instead follow in such situations—with or without the existence of such a formal rule.

5. Defendants' counsel incorrectly represent the Court of Appeals for the District of Columbia Circuit as having joined those two courts in *Connors v. P & M Coal Co.*, 801 F.2d 1373 (D.C.Cir.1986). But the *Connors* opinion made it plain from the outset that the court was discussing the very different question of individual liability for employer *withdrawal* from a multiemployer plan (a question under ERISA subchapter III, also spoken of as "Title IV"), while the issue before this Court is ERISA subchapter I (also known as "Title I") liability for delinquent contributions. That distinction is critical, because the broad-sweep definition of "employer" under Section 1002(5) is specifically made applicable *only* to subchapter I. Familiar principles of statutory construction would therefore draw a *negative* inference from that fact in reading subchapter III, and *Connors*, 801 F.2d at 1377 specifically said it was not deciding the subchapter I question.

6. D. Mem. 4 n. 2 cites *Indiana State Council of Roofers Health and Welfare Fund v. Adams Roofing Co. of Kokomo*, 753 F.2d 561, 564 (7th Cir.1985), but that case cannot fairly be read in the manner defendants urge. It says "[t]he provisions of the trust agreement provide the framework with which a court should analyze an employer's obligation to contribute to a health and welfare fund." For the reason stated in the next paragraph of the text, that unexceptionable proposition cannot be extended to limit contribution liability solely to the corporate "employer" that has signed the CBA or trust agreement, immunizing the "person acting indirectly ... in the interest of [that] employer."

spoken in a wholly idle manner. Accordingly this Court, like the other courts that have found some room for personal liability, will consider that a "person" within the Section 1002(5) definition of "employer" in relation to his or her corporation may be responsible for contributions even though only the corporation is the CBA signatory.

Only Index is liable for the delinquent contributions in straight contract terms: Keenan was not a signatory to the CBA and was not, then, the "employer" designated in that agreement. Instead Trustees contend the Section 1002(5) inclusion, in the statutory definition of "employer," of "any person acting ... indirectly in the interest of an employer, in relation to an employee benefit plan" sweeps up Keenan. Thus under the analysis of the preceding paragraph the question becomes one of giving content to that statutory language, for which purpose Trustees invoke the long-standing precedents that have defined the substantively identical language under the Fair Labor Standards Act ("FLSA").

In enacting ERISA Congress specified an intended broad sweep of the legislation in social-purpose terms (see Section 1001(a))—an intention courts have honored by acting to insure employers' making of plan contributions and workers' receipt of benefits to which they are entitled—just as Congress had stated for FLSA and workers' entitlement to overtime. That does not, of course, justify an expansion of ERISA's coverage beyond its terms.[7] But it *does* justify application of the normal rule in reading statutes: that when a statutory provision tracks an earlier one, the judicial construction of that earlier one also carries over to the later statute.

FLSA's relevant definitions of "employer" (Section 203(d)[8]) and of "person" (Section 203(a)) are startlingly parallel to those already quoted from ERISA. Here are the FLSA definitions (emphasis added):

(d) "Employer" includes *any person acting directly or indirectly in the interest of an employer in relation to an employee* and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization. (a) "Person" means an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons.

Though ERISA's legislative history contains no specific identification of the origins of its corresponding provisions, it would be extraordinarily myopic to view the identity of the critical language as fortuitous (as perhaps a proof of the premise that if enough monkeys were put in front of enough typewriters for a long enough time, one of them would reproduce a Shakespearean play), or as lacking controlling impact in construing the later ERISA provisions. This opinion turns, then, to how courts have read the identical FSLA language.

There is no doubt that if the question were whether Keenan is an "employer" within FLSA's essentially identical definition, and hence personally liable for unpaid overtime wages, the answer would be a resounding "yes." *Falk v. Brennan*, 414 U.S. 190, 195, 94 S.Ct. 427, 431, 38 L.Ed.2d 406 (1974) referred to and applied what it termed "the expansiveness of the Act's definition of 'employer.'" To be sure, the *Falk* context was substantially different from that of an individual acting for his own corporation cum-chief-executive-officer, cum-director or cum-sole-stockholder. But what is more significant is the *Falk* approach—the fact that the real estate management firm involved there was held a statutory "employer" of individuals who were concededly someone else's employees (the property owners'), and the fact that the Court did so because of the firm's "managerial responsibilities ... which gave it substantial control of the terms and conditions of the work of these employees"

---

7. This Court is not an exponent of the too-often-encountered judicial practice of looking at the legislative history first—then, if that is ambiguous, looking at the words of the statute.

8. As with the ERISA citations, FLSA provisions are cited under their Title 29 numbering rather than the internal statutory numbering.

(*id.*). That reflected, in the Court's view, the proper scope to be given the statutory phrase "acting ... indirectly in the interest of an employer."

That same line of analysis has consistently been applied by lower courts (both before and after *Falk*) to bring individuals who control corporate operations into the FLSA "employer" category as to persons employed by their corporations. As *Donovan v. Agnew*, 712 F.2d at 1511 has accurately said:

> The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.

For that purpose *Agnew* cited a group of decisions, including a number antedating the enactment of ERISA.[9] That same proposition was reaffirmed by the Fifth Circuit in *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971–72 (5th Cir.1984), where the court in part distinguished the one pre-ERISA case under FLSA that might arguably be viewed as looking the other way (*id.* at 972 n. 8).[10] And our own Court of Appeals has recently had occasion to remark on the sweep of the FLSA "employer" definition to pick up individuals despite the fact that the direct employer is a corporation (*Riordan v. Kempiners*, 831 F.2d 690 (7th Cir.1987) (citations omitted)):

> The word "employer" is defined broadly enough in the Fair Labor Standards Act (of which the Equal Pay Act is an amend-

ment) to permit naming another employee rather than the employer as defendant, provided the defendant had supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation. See 29 U.S.C. § 203(d) (employer within the meaning of the Act includes "any person acting directly or indirectly in the interest of an employer in relation to an employee")....

■ This Court is of course aware of the basic insulation from personal liability normally afforded individuals when they do business in corporate form. But the uniform judicial reading of the FLSA definition of "employer" (a definition, it will be remembered, whose "acting directly ... or indirectly in the interest of an employer" language is repeated in ERISA) has been that such a broad-sweep definition was intended to strip away that insulation where the corporation-controlling individual has opted to prefer the payment of other corporate debts to the payment of obligations running to corporate employees and given special statutory recognition by Congress. Courts have implemented that intention under FLSA, and they should do no less under ERISA's substantively identical provisions.[11]

In candor, then, it is unexplainable to encounter responsible courts rejecting that result under ERISA on what appears to be either a total unawareness of the situation just discussed[12] or on a less than specious

9. In addition to *Agnew* and *Grim Hotel* and the cases they cite, other cases imposing such personal liability under FLSA are collected at annotation notes 250 and 256 to 29 U.S.C.A. § 203 (1978 ed. and 1987 pocket part).

10. *Grim Hotel*'s description of the activity of the corporate principal there (*id.* at 972) might well have been written about Keenan in this case.

11. That reasoning has led district courts in the First Circuit, bound to follow *Donovan v. Agnew*, to reach the same result under ERISA. As for the Court of Appeals for the First Circuit itself, it has had no occasion to decide the question directly. Just two months ago, in *DeBrecini v. Graf Bros. Leasing, Inc.*, 828 F.2d 877 (1st Cir.1987) it decided the different question of what circumstances would trigger individual responsibility for a corporate employer's with-

drawal liability under ERISA subchapter III (not individual liability for contributions under subchapter I). Like the D.C. Circuit in *Connors v. P & M Coal Co.*, *DeBrecini* applied the corporate-veil-piercing test for that purpose. Like that other Circuit, *DeBrecini, id.* at 879–80 noted the specific inapplicability of ERISA subchapter I's broad definition of "employer" (the one at issue here) to subchapter III. And like the D.C. Circuit, *DeBrecini, id.* at 880 n. 8 noted and reserved ruling on the very different subchapter I question this opinion must decide.

12. *Operating Engineers* and the earlier Ninth Circuit opinions on which it relies do not disclose any knowledge of the parallel FLSA definitions or of the overwhelming weight of authority applying those definitions to impose personal liability. At least the opinions do not discuss the matter at all.

statutory analysis. In that latter category, *Solomon v. Klein*, 770 F.2d at 354 (quoting approvingly from *Combs v. Indyk*, 554 F.Supp. 573, 575 (W.D.Pa.1982)) points to the fact that ERISA's definition of "person" (the term used in turn in the definition of "employer") does not specifically include "officer":

> There is no indication that Congress intended to expose corporate officers to liability for their employers' violations of ERISA; in fact, the exclusion of corporate officers from the extensive enumeration of persons points in the opposite direction.

At least two reasons demonstrate the total irrelevancy of that fact.

First, a straightforward reading of the "person" definition shows it simply follows the theme common to a great many statutes: To save a constant repetition of terms in the substantive parts of the legislation, the draftsmen use a generic term ("person") throughout those substantive sections and then give that term its content in the definitions part of the statute. Section 1002(9) makes plain that all manner of *entities,* and not just the individual human beings commonly denoted by the term "person," are meant to be covered by the legislation. Every word in the definition names a different kind of jural entity, and each adds something to the universe described by the other jural entities. By contrast, "officer" or "director" or even "stockholder" are not other types of *entities* at all, but are merely designations of certain *capacities* in which one kind of entity—an individual—can function. Those terms are merely small subsets of persons already included within the genus "individual." It would really have involved mixing apples and oranges to have included those capacity-designating labels as part of the statutory definition of "person." No negative inference should be drawn from their omission.

Second, the *Solomon v. Klein*-approved argument along those lines really proves too much. After all, the FLSA definition of "person" is *identical* in that respect: It too omits "officers" from its laundry list of jural entities included within the term "person." If the Third Circuit's analysis were sound, the consistent line of FSLA cases that uniformly include controlling officers within the "employer" category have all been decided incorrectly. Indeed, so far as appears from the discussion in *Solomon v. Klein* and the Ninth Circuit opinions, the essential identity of the FLSA–ERISA definitions of "person" and the overwhelming weight of parallel precedent in cases under FLSA were never called to the courts' attention.

In sum, it would of course have been possible for courts in the FLSA cases to have read the statutory reference to "any person acting ... indirectly in the interest of an employer" in a nonexpansive way—perhaps as enacting only a corporate-veil-piercing exception to the insulation of corporate controlling persons from personal liability for their corporations' obligation to pay employees overtime. But the courts did not do that. Instead they adopted the same broad-brush line of analysis as did *Falk v. Brennan,* finding that the strong public policy implicit in Congress' enactment called for subjecting individuals in Keenan's position to such personal liability. Then Congress acted again in enacting ERISA, this time doing so against the backdrop of FLSA itself and of the solid body of case law reading FLSA in that fashion—and Congress used exactly the same language that had produced the personal liability result under FLSA. Given that legislative history, responsible jurisprudence calls for giving the same language the same meaning in ERISA.[13]

### Amount of Liability

As already stated in the "Facts" section of this opinion, Trustees have adopted the following rule as to amounts due in addition to delinquent payments pursuant to

---

**13.** If the just-completed analysis has any elements of repetitiveness, apologies are extended to the reader. When other courts—highly respected ones—have reached a sharply different conclusion without examination or discussion of the factors this Court finds compelling, it seems obligatory to provide a detailed review of those factors.

the authority given Trustees under the CBA and Trust Agreement:

> costs, attorneys' fees and liquidated damages in an amount equal to the greater [sic] of:
>
> > (a) An amount determined the same as interest in paragraph 2 above [2% over the prime rate as published in the *Wall Street Journal* ]; or
> >
> > (b) 20% of the unpaid contribution; or
> >
> > (c) Such higher percentage as may be permitted under federal or state law.

There is no dispute that the greatest of the three alternatives under (a), (b) and (c) is "20% of the unpaid contribution." As Index and Keenan would have it, that amount is then the measure of the *total* of "costs, attorneys' fees and liquidated damages" for which they can be held liable. On the other hand, Trustees urge the "20% of the unpaid contribution" amount is simply a measure of the liquidated damages alone, so that "costs" and "attorneys' fees" may be collected over and above that figure.

■ As a matter of sheer use of the English language, either of those arguments might be classed as tenable. Two reasons, however, compel the conclusion that Trustees have by far the better of the dispute:

> 1. Section 1132(g)(2)(C)(ii) also specifies a 20% liquidated damages provision. Indeed, a comparison of that section with Trustees' rule indicates the latter is a somewhat less artistic duplication of the statute, which specifically calls for an award of such liquidated damages *in addition to* attorneys' fees and costs.[14]
>
> 2. Gambino's Supplemental Affidavit specifically confirms Trustees' consistent interpretation of their own rule in accordance with their present argument.[15] Uniform case law confirms that such interpretations must be sustained by the courts as long as they are not purely arbitrary and capricious and may thus be viewed as reasonable—as Trustees' reading surely is (see, e.g., such typical cases as *Brown v. Retirement Committee of the Briggs & Stratton Retirement Plan*, 797 F.2d 521, 525–26, 529–30 (7th Cir. 1986), *Harm v. Bay Area Pipe Trades Pension Plan Trust Fund*, 701 F.2d 1301, 1304 (9th Cir.1983), *Jestings v. New England Telephone and Telegraph Co.*, 757 F.2d 8, 9 (1st Cir.1985) and the cases they cite).

In short, Trustees are correct in asserting their entitlement to 20% of the delinquent contributions (in this instance, $2,483.37) as liquidated damages, *plus* all attorneys' fees and costs they have incurred (including those in dealing with the current motion). Those amounts and the interest on the contributions are the only open items requiring resolution by this Court.

### Conclusion

There is no genuine issue as to any material fact. Both Index and Keenan are jointly and severally liable to Trustees for the $12,416.84 delinquency in ERISA contributions from March 1985 through May 1987, for interest on that delinquency, for liqui-

---

**14.** Section 1132(g)(2)(B) provides for an award of interest on the unpaid contribution (this is mirrored in paragraph 2 of Trustees' rule, which precedes the paragraph 3 quoted in full earlier in the text of this opinion). Then Section 1132(g)(2)(C) says "the court shall award" (familiar mandatory language) the *greater* of (i) the same amount of interest (thus providing double interest) or (ii) the 20%–of–delinquency "liquidated damages" (this set of alternatives is effectively mirrored in the just-quoted portion of paragraph 3 of Trustees' rule beginning with the words "liquidated damages"). Then Section 1132(g)(2)(D) goes on to say "the court shall award" (again mandatorily) "reasonable attorney's fees and costs of the action." In light of the mandatory phrasing of the statute, all those amounts could be awarded even if the trust agreement and rules were silent on the subject. And it is surely reasonable to construe the rule Trustees did adopt as having tracked the statute.

**15.** Defendants moved to strike that Supplemental Affidavit as (1) a usurpation of this Court's function of interpreting the language of Trustees' rule as a matter of law, (2) a self-serving statement of Trustees' contention, and therefore inadmissible into evidence, and (3) an irrelevant reference to Trustees' collection of liquidated damages as well as attorneys' fees and costs in other instances. None of those arguments is sound. Their motion is denied.

dated damages in the amount of $2,483.37 and for all attorneys' fees and costs incurred by Trustees. This matter is set for a status report November 30, 1987 at 9 a.m. to discuss the quantification of those last items and, if possible, to enter final judgment. To that end the litigants are urged to confer in advance of the status hearing in an effort to minimize or eliminate entirely any evidentiary disputes on the relevant amounts.