**Paul L. GLOVER, et al., Plaintiffs,**

v.

**S.D.R. CARTAGE COMPANY, INC., etc., et al., Defendants.**

**No. 86 C 4297.**

United States District Court, N.D. Illinois, E.D.

March 1, 1988.

Joseph M. Burns, Karen I. Engelhardt, Jacobs Burns Sugarman & Orlove, Chicago, Ill., for plaintiffs.

John J. Arado, Christopher A. Keele, Wildman Harrold Allen & Dixon, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

This case involves the question of whether controlling stockholders and officers of a corporation that has withdrawn from a multiemployer pension plan and has been assessed withdrawal liability can be held personally liable for this corporate debt. Plaintiffs, trustees of the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund ("Fund"), initiated this action under the Employee Retirement Income Security Act ("ERISA") as amended by the Multiemployer Pension Plan Amendment Act of 1980 ("MPPAA"), Pub.L. 96–364, 94 Stat. 1208 (1980), 29 U.S.C. §§ 1001 *et seq.*, to recover an assessment of withdrawal liability. Defendants are S.D.R. Cartage Company ("S.D.R."), an Illinois corporation, and Steven and Rose Marie Balich ("Baliches"), officers and controlling stockholders of S.D.R. The Baliches moved to dismiss this action against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Proce-

dure, claiming that they are not liable for S.D.R.'s withdrawal liability because they are not "employers" as required by 29 U.S. C. § 1381.[1] For the reasons stated, the motion is granted.

## FACTS

S.D.R. and the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) entered into a collective bargaining agreement under which S.D.R. was required to contribute to the Fund, a multiemployer pension plan. On May 25, 1984, S.D.R. stopped making contributions and completely withdrew from the Fund. Plaintiffs notified S.D.R. that it was being assessed a withdrawal liability of $24,479, which was to be paid in quarterly installments. S.D.R. failed to make the quarterly payments and plaintiffs notified S.D.R. that unless the company made the first two payments within 60 days, it would become liable for the entire $24,479 plus accrued interest. S.D.R. did not make the payments and plaintiffs brought this action.

## DISCUSSION

The Baliches contend that they cannot be held liable for S.D.R.'s withdrawal liability because they are not "employers" within the meaning of 29 U.S.C. § 1381(a). They first argue that the broad definition of employer in subchapter I of ERISA does not apply to withdrawal liability. Alternatively, they contend that even if this statutory definition is applicable, it does not include controlling stockholders or officers of a corporation simply by virtue of those positions. Finally, the Baliches claim that plaintiffs have alleged no facts to allow this court to "pierce the corporate veil" of S.D.R. and hold them personally liable.

I. Definition of Employer for Withdrawal Liability

A. Limitation Clause of Subchapter I

■ While the Seventh Circuit Court of Appeals has yet to decide whether the sub-

---

1. Section 1381 states in pertinent part:
   If an employer withdraws from a multiemployer plan ... then the employer is liable to

the plan in the amount determined under this part to be withdrawal liability.
29 U.S.C. § 1381(a) (1982).

chapter I definition of "employer" applies to withdrawal liability described in subchapter III, two other courts of appeals have determined that the subchapter I definition does not so apply. *See DeBreceni v. Graf Bros. Leasing, Inc.*, 828 F.2d 877, 879–80 (1st Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1024, 98 L.Ed.2d 988, (1988); *Connors v. P & M Coal Co.*, 801 F.2d 1373, 1377 (D.C.Cir.1986). Although deference to these decisions is not automatic, we have been instructed by the Seventh Circuit to give such decisions "respectful consideration ... and follow them whenever we can." *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir.1987). For the following reasons we find persuasive the conclusions of these courts.

No definition of employer appears in subchapter III and, though the term employer is defined in subchapter I, this definition is specifically limited to subchapter I [2] and does not automatically apply to other subchapters unless specifically incorporated by reference. *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 370 & n. 14, 100 S.Ct. 1723, 1730 & n. 14, 64 L.Ed.2d 354 (1980); *Gambino v. Index Sales Corp.*, 673 F.Supp. 1450, 1453 n. 5 (N.D.Ill.1987). The absence of an explicit cross-reference within subchapter III indicates that Congress did not intend the sub-

chapter I definition of employer to be applicable to subchapter III. *Refined Sugars, Inc. v. Local 807 Labor–Management Pension Fund*, 632 F.Supp. 630, 632 (S.D.N.Y. 1986). *Cf.* 29 U.S.C. § 1301(a)(1) (1982) (explicitly incorporating subchapter I definition of administrator in subchapter III); 29 U.S.C.A. § 1301(a)(15) (West Supp.1987) (explicitly incorporating subchapter I definition of defined benefit plan in subchapter III); 29 U.S.C.A. § 1301(a)(20) (West Supp. 1987) (explicitly incorporating subchapter I definition of person in subchapter III).

Plaintiffs argue that the subchapter I definition of employer is incorporated by the subchapter III enforcement provision which states that an employer's failure to make timely withdrawal payments should be treated in the same manner as delinquent pension contributions, an obligation imposed by subchapter I, 29 U.S.C. § 1451(b) (1982).[3] The legislative history of the MPPAA indicates that §. 1451(b) equates only the *remedy* for failure to pay withdrawal liability, *e.g.* unpaid withdrawal liability plus interest plus liquidated damages, with a failure to make pension contributions, *see* H.R.Rep. No. 869(II), 96th Cong., 2d Sess. 42, *reprinted in* 1980 U.S. Code Cong. & Admin.News 2993, 3032, and should not be interpreted as a broad congressional mandate to incorporate subchapter I definitions in subchapter III.[4]

---

**2.** 29 U.S.C. § 1002 provides in relevant part: For purposes of this subchapter: The term "employer" means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity.
*Id.* § 1002(5) (1982).

**3.** Neither party cites case law on this issue and this court finds only one case where it was briefly noted but was not a basis for the court's holding. *See Combs v. Sun–Up Coal Co.*, 634 F.Supp. 13, 17 n. 6 (D.D.C.1985). Thus, we do not rely on *Combs.*

**4.** Plaintiffs cite a number of district court decisions to support their position, but only two cases, *ILGWU Nat'l Retirement Fund v. Distinctive Coat Co.*, 6 Employee Benefits Cas. (BNA) 2631 (S.D.N.Y.1985) [Available on WESTLAW, 1985 WL 9586] and *Central Pennsylvania Teamster's Pension Fund v. Service Group, Inc.*, 645 F.Supp. 996 (E.D.Pa.1985), involve withdrawal

liability. While both courts applied the subchapter I definition of "employer" to withdrawal liability, *see ILGWU*, 6 Employee Benefits Cas. at 2634; *Central Pennsylvania*, 645 F.Supp. at 997, we find neither case persuasive and both cases are far outnumbered by the overwhelming majority of those holding to the contrary. In *Central Pennsylvania* the court applied the subchapter I definition to subchapter III, without discussing the limitation clause in subchapter I, and in *ILGWU* the court did not hold that the subchapter I definition automatically applied to withdrawal liability but instead imposed liability based on the relationships between the parties involved. Specifically, *ILGWU* concerned a manufacturer who agreed to contribute to a pension fund on behalf of a direct employer. Under these circumstances, the court held that extension of the subchapter I definition to withdrawal liability "would not contravene the purpose" of the MPPAA. 6 Employee Benefits Cas. at 2634. Further, the only cases following *ILGWU* have found liable corporations who were not direct employers but who by contract con-

There is no strong policy reason to apply the subchapter I definition of employer to withdrawal liability. Unlike suits brought to collect delinquent pension contributions or unpaid wages, where those failing to contribute are fully accountable for not doing so, in the withdrawal liability context individuals may be entirely free of fault, yet upon the employer's withdrawal from the pension plan, the plan may still have unfunded vested benefits which result in a liability assessment. Thus, the reason for holding individuals personally liable as employers for unpaid wages or pension contributions is absent when assessing withdrawal liabilities. *See Combs*, 634 F.Supp. at 16.

### B. Stockholders and Officers' Liability

█ Plaintiffs argue that this court should define employer for withdrawal liability purposes to include corporate officers and controlling shareholders. To hold stockholders and officers personally liable for a withdrawal assessment, we apply principles of corporate law and determine whether sufficient facts have been alleged to pierce S.D.R.'s corporate veil. *See De-Breceni*, 828 F.2d at 878 (stringent "pierce the corporate veil" test applies in withdrawal liability cases); *P & M Coal*, 801 F.2d at 1374 (same). *Accord Scarbrough v. Perez*, 683 F.Supp. 659, 660–61 (W.D.Tenn. 1987); *Canario v. Byrnes Express & Trucking Co.*, 644 F.Supp. 744, 750–51 (E.D.N.Y.1986), *withdrawn due to settlement*, 652 F.Supp. 385 (E.D.N.Y.1987); *Combs*, 634 F.Supp. at 19; *Connors v. Darryll Waggle Construction, Inc.*, 631 F.Supp. 1188, 1191 (D.D.C.1986); *Connors v. B.M.C. Coal Co.*, 634 F.Supp. 74, 77 (D.D.C.1986).

The MPPAA evinces no Congressional intent to treat corporate debts for withdrawal liability differently from any other corporate debts or to hold officers and shareholders personally liable for withdrawal liability assessments. *See DeBreceni*, 828 F.2d at 880. Further, unlike minimum wage or other payments that a corporation can choose not to pay, thus preferring some creditors to its employees, corporations do not have the same control over withdrawal liability payments. As the *DeBreceni* court noted, bankruptcy is the context in which stockholder and officer liability for withdrawal assessments is most likely to be relevant. *Id.*

> If the liabilities of the employer corporation exceed its assets, which is the likely condition when a pension fund seeks to recover against officers or shareholders personally, the corporation will enter into bankruptcy proceedings, thereby losing control over which creditors receive payments.

*Id.* at 880–81. Thus, once a corporation ceases doing business, withdraws from the relevant pension plan and incurs withdrawal liability, the officers and shareholders are not responsible for deciding which creditors get paid and which do not. Holding such individuals liable will not increase the likelihood that withdrawal payments will be made to pension fund [5] and thus does not further the purposes of the MPPAA. As a matter of policy, routinely holding officers and stockholders liable for withdrawal payments will discourage these individuals from directing corporations to contribute to multiemployer pension plans and thus hurt the very persons whom the MPPAA sought to benefit—the employees. *Id.* at 881. This would be contrary to the intent to the MPPAA. *See* 29 U.S.C. § 1001a(c)(2) (1982).

Additionally, the Pension Benefit Guaranty Corporation (PBGC), the entity administering withdrawal liability under ERISA, supported this position in an opinion letter concerning the liability of corporate share-

---

tributed directly or indirectly to the relevant pension plans. *See, e.g., Matter of Uiterwyk Corp.*, 63 B.R. 264, 265–66 (M.D.Fla.1986). These cases do not present factual situations similar to the case currently before us.

**5.** As discussed in *DeBreceni*, while imposing personal liability on shareholders and officers may force corporations to take greater measures to avoid bankruptcy, any benefit will probably be marginal since an incentive already exists for these individuals to attempt to elude bankruptcy —obtaining returns on their investments. 828 F.2d at 881.

holders and officers for a corporation's withdrawal assessments. The opinion letter stated:

> ERISA has no special rules regarding shareholder or officer liability.... [T]his issue is usually determined by state law which generally provides that shareholders are not liable for the debts of a corporation. You should, however, be aware that the laws of every state contain exemptions to this general principle.

*Massachusetts State Carpenters Pension Fund v. Atlantic Diving Co.,* 635 F.Supp. 9, 14 n. 3 (D.Mass.1984) (quoting PBGC Opinion Letter 83–038 (Dec. 14, 1982)). Interpretation of ERISA by the PBGC should not be rejected unless there is evidence Congress intended a contrary result. *See Nachman,* 446 U.S. at 373–74, 100 S.Ct. at 1732. We find no such evidence.

Further, we find no support for plaintiff's argument in the case law. All cases cited by plaintiffs involve liability for delinquent pension contributions, not withdrawal liability and consequently rely on the definition of employer in subchapter I of ERISA.[6] We have already rejected the application of the subchapter I employer definition to withdrawal liability. Whatever validity these cases may have on the issue of liability for delinquent pension contributions, *DeBreceni* and *P & M Coal* have undermined their persuasive force with respect to withdrawal liability.[7] Consequently, we hold that the Baliches are not liable for S.D.R.'s withdrawal payments solely due to their positions as controlling stockholders and officers.

**6.** After this motion was fully briefed, a court in this district held a corporate chief operating officer jointly liable with the corporation for delinquent pension contributions. *Gambino,* 673 F.Supp. at 1457. The *Gambino* court also relied on the subchapter I definition of employer, *see id.* at 1452, but twice noted that this definition was not applicable to withdrawal liability. *Id.* at 1453 n. 5, 1455 n. 11.

**7.** The line of Massachusetts decisions cited by plaintiff, *Alman v. Frank's Sportswear Co.,* 6 Employee Benefits Cas. (BNA) 2798 (D.Mass. 1985); *Massachusetts State Carpenters Pension*

## II. Piercing the Corporate Veil

■ As discussed above, courts not routinely holding officers and controlling stockholders liable for withdrawal obligations will find liability if facts justify piercing the corporate veil. *See DeBrecini,* 828 F.2d at 878; *P & M Coal,* 801 F.2d at 1378. Although plaintiffs present arguments that may eventually show that S.D. R. was the Baliches' alter ego, they do not allege facts to support these claims.

## CONCLUSION

The Baliches' motion to dismiss is granted without prejudice.

*Fund v. Atlantic Driving Co.,* 635 F.Supp. 9, 13 (D.Mass.1984); *Alman v. Servall Mfg. Co.,* 6 Employee Benefits Cas. (BNA) 2031 (D.Mass. 1984), are controlled by *DeBreceni* and may not be applied to withdrawal liability. Other decisions which rely on these cases, or the *P & M Coal* district court decision, which was reversed on appeal, *see Upholsterer's International Union Health & Welfare Fund Trustees v. Pontiac Furniture, Inc.,* 647 F.Supp. 1053, 1055 (C.D.Ill. 1986); *Keystone Shipping Co. v. Masters, Mates & Pilots Pension Plan,* No. N–85–2977, slip op. at 7 (D.Md. Apr. 7, 1986) are not authoritative.