**WEST VIRGINIA–OHIO VALLEY AREA IBEW WELFARE FUND and National Electrical Benefit Fund, Plaintiffs,**

v.

**BALL ELECTRIC COMPANY, INC. and James T. Warren, etc., Defendants.**

Civ. A. No. A:87–0991.

United States District Court, S.D. West Virginia, Parkersburg Division.

June 3, 1988.

---

Robin Jean Davis, Stanley M. Hostler, Hostler & Segal, Charleston, W.Va., for plaintiffs.

James T. Warren, Ball Elec. Co., Inc., Belpre, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER.

HADEN, Chief Judge.

Pending in this action is the motion of the Plaintiffs for summary judgment. The Court by earlier Order advised the *pro se* Defendants of their right to submit opposing materials. *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975). The Defendants have filed an "Answer to Order." The Court now deems the motion mature for consideration.

The Plaintiffs, two union established funds, bring this action against the Defendants, Ball Electric Company, Inc. and James T. Warren, for collection of unpaid contributions to the funds. Warren is the President and sole stockholder of Ball Electric. The contributions are due the fund per a collective bargaining agreement.

The Plaintiffs have made out a prima facie case for recovery. They properly document that the Defendants have failed to make all the required contributions. Although notified of their right to submit affidavits in opposition to the Plaintiffs' motion, the Defendants have submitted none. Neither have they submitted any other testimony under oath. Rather, the Defendants have filed a one-paragraph "Answer to Order" which merely takes note of the copies of checks attached to the answer. The checks are alleged to represent payments to the two funds. The Plaintiffs acknowledge that they have received such payments. Hence, the "Answer to Order" represents an area of agreement between the parties rather than disagreement.

The Defendants make no allegation in their response that the Plaintiffs have been paid all amounts due. Neither do the Defendants address a significant issue in this litigation: the personal liability of Mr. Warren. The Plaintiffs argue that Mr. Warren should be personally liable for the delinquencies incurred by his company. Under the undisputed circumstances of this case, the Court agrees.

Under general corporate law the corporate veil may be pierced to reach the individual only where there is a showing that the corporation is in fact the alter-ego of the individual. Facts tending to indicate that the corporate entity is an alter-ego are the inadequate capitalization of the corporation, the lack of attention shown to corporate formalities, comingling of personal and corporate accounts, and others of like nature. Some courts have used the analysis involved in piercing the corporate veil in the context of actions such as this one brought pursuant to the Employment Retirement Income Security Act (ERISA). *See, e.g., Alman v. Danin*, 801 F.2d 1 (1st Cir.1986).

The easy case is one such as *Alman* where a board of directors has never formally met; the corporation has kept no corporate records; there have been intercorporate loans; and the corporation is inadequately capitalized. The Plaintiffs here have not presented any evidence which would support piercing the corporte veil of Ball Electric. Instead, the Plaintiffs proceed on an alternate theory. They contend that under ERISA and the West Virginia Wage Payment and Collection Act, a pendent claim, Mr. Warren can be held personally accountable without regard to whether the corporate veil is pierced. The Plaintiffs' authority for both propositions is persuasive.

First, it is well settled in West Virginia that a managing corporate officer "may be held personally liable for unpaid wages, fringe benefits, and liquidated damages under *W.Va. Code*, § 21–5–4." *Mullins v. Venable*, 297 S.E.2d 866, 869 (W.Va.1982). The test is whether the corporate officer knowingly permitted his corporation to act in violation of the provisions of the Act. *Id.* Mr. Warren offers no denial as to his personal involvement in the unpaid contributions. There is no dispute that he is the sole decision maker for the corporation.

Second, an approach similar to that of the West Virginia court is also being taken by federal courts with regard to ERISA. That act imposes liability for employee benefit plan contributions on "employers." The courts have held that while a corporate officer may not be an employer in the traditional sense, he may be one in statutory terms. Instructive on this point is *Gambino v. Index Sales Corp.*, 673 F.Supp. 1450 (N.D.Ill.1987). In *Gambino*, Judge Shadur eloquently explains why the statutory term is broader in meaning than the traditional. He points out that ERISA borrowed statutory phraseology from the preexisting Fair Labor Standards Act. The latter act has consistently been construed as extending personal liability to controlling officers.

Consistent with the approach employed in *Gambino*, another court has recently held

"that personal liability should be imposed on individuals who are (1) corporate officers with significant ownership interests; (2) who had control of significant aspects of the corporation's day-to-day functions; (3) including acting on behalf of the corporation with respect to the pension fund; and (4) who personally made the decision to continue operations despite financial adversity during the period for which payments are claimed."

*Trustees of Amalgamated Ins. Fund v. Danin*, 648 F.Supp. 1142, 1147 (D.Mass. 1986). All four of the above elements are met by Mr. Warren. The facts are not in dispute.

Based upon the above truncated analysis, and with reference to the persuasive decisional law developing on the subject, the Court finds that Mr. Warren, as the controlling officer of Ball Electric, is personally liable on the judgment to be entered herein.

The Court rules that as a matter of law the Plaintiffs are entitled to summary judgment against both the Defendants on the issue of liability. Given the payments which have been made by the Defendants, the Court is uncertain as to the amount for which judgment should be entered. Compounding this uncertainty is the scant guidance which the Plaintiffs offered on the amount of statutory liquidated damages to which they are entitled. Accordingly, the Court ORDERS as follows:

1. That the Plaintiffs submit the proper documentation (affidavit or otherwise) as to the amount of the contributions unpaid as of the date the complaint was filed minus any subsequent payments;

2. That the Plaintiffs submit the amount of liquidated damages, if any, to which they are entitled;

3. That the Plaintiffs submit the amount of prejudgment interest, if any, to which they are entitled; and

4. That the Plaintiffs submit documentation supporting their claim for attorney fees incurred in bringing this action.

The Plaintiffs are directed to do the above within ten days of the date this Order is entered. Moreover, finding the Plaintiffs entitled to a permanent injunction, the Court directs the Plaintiffs to submit within ten days language for inclusion in an order enjoining the Defendants from further violations.

Upon receipt of the above information, the Court will enter judgment in favor of the Plaintiffs and against the Defendants, jointly and severally, for a sum certain.

As a final note, the Court cautions the Plaintiffs not to duplicate damages which are available under ERISA and the West Virginia Wage Payment and Collection Act. Those two acts provide two bases for recovery. They do not provide a basis for two recoveries.