**James M. TINSLEY, Plaintiff,**

v.

**GENERAL MOTORS CORP., Defendant.**

Civ. No. F 85–151.

United States District Court, N.D. Indiana, Fort Wayne Division.

Dec. 6, 1985.

Josef Musser, Marion, Ind., for plaintiff.

Howard E. Kochell, Indianapolis, Ind., Thomas M. Shoaff and Michael L. James, Fort Wayne, Ind., for defendant.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on cross-motions for summary judgment. Neither party has filed a responsive pleading to the other party's motion, although the defendant's ("GM") memorandum in support of its motion does address the arguments raised in plaintiff's ("Tinsley") motion. For the following reasons, plaintiff's motion will be denied, and defendant's motion will be granted.

This action was originally filed in the Grant County Superior II Court. Tinsley claimed that GM breached the terms and conditions of its retirement and disability benefits programs, thereby entitling Tinsley to a recalculation of his benefits. GM removed the action to this court on the basis of diversity jurisdiction, although it later pointed out that the controversy is in fact governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, which would be a second basis for removal. Both parties now move for summary judgment.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, summary judgment serves as a vehicle with which the court "can determine whether further exploration of the facts is necessary." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975).

In making this determination, the court must keep in mind that the entry of summary judgment terminates the litigation, or an aspect thereof, and must draw all inferences from the established or asserted facts in favor of the non-moving party. *Munson v. Friske*, 754 F.2d 683, 690 (7th Cir.1985). The non-moving party's reasonable allegations are to be accepted as true for purposes of summary judgment. *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1218–19 (7th Cir.1984). A party may not rest on the mere allegations of the pleadings or the bare contention that an issue of fact exists. *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). *See also Atchison,*

*Topeka & Santa Fe Railway Co. v. United Transportation Union,* 734 F.2d 317 (7th Cir.1984); *Korf v. Ball State University,* 726 F.2d 1222 (7th Cir.1983). *See generally* C. Wright, *Law of Federal Courts,* § 99 (4th ed. 1983); 6 *Moore's Federal Practice,* § 56.15 (2d ed. 1984).

Thus, the moving party must demonstrate the absence of a genuine issue of material fact. Even if there are some disputed facts, where the undisputed facts are the material facts involved and those facts show one party is entitled to judgment as a matter of law, summary judgment is appropriate. *Egger v. Phillips,* 710 F.2d 292, 296–97 (7th Cir.1983); *Collins v. American Optometric Assn.,* 693 F.2d 636, 639 (7th Cir.1982). *See also Bishop v. Wood,* 426 U.S. 341, 348, 348 n. 11, 96 S.Ct. 2074, 2079, 2079 n. 11, 48 L.Ed.2d 684 (1976).

Based on these principles, the relevant facts appear to be as follows. Tinsley began working for GM at its Marion, Indiana plant on September 24, 1956. On March 1, 1965, Tinsley began working in a "Code 5" salary classification job, with a then base monthly salary of $625.75. He remained a Code 5 employee until January 1, 1982, enjoying a slow but steady increase in his monthly base salary so that by January 1, 1982 the monthly base salary was $2,033.00. On January 1, 1982, Tinsley was transferred to a Code 4 salary classification job, and his monthly base salary declined to $1,850.00.

On March 8, 1982, Tinsley applied for Sickness and Accident benefits under GM's insured welfare benefit plan for classified salaried employees. Under the terms of the welfare benefit plan, the Sickness and Accident benefits, as well as an Extended Disability Benefit Insurance program, are part of a group disability insurance policy issued by the Metropolitan Life Insurance Company. The welfare benefit plan also mandates that GM serve as Plan Administrator, a fiduciary position.

Under the welfare benefit plan, a classified salaried employee with over ten years of service can receive Sickness and Accident benefits equal to "75% of his monthly base salary" for up to twelve months, commencing after a seven day waiting period. In addition, GM has a salary continuation policy which pays the employee's full salary during the seven day waiting period, and then for a period of twenty-five weeks pays an additional contribution of 25% of salary, so that the employee receives his full monthly base salary.

The welfare benefit plan also provides for Extended Disability benefits of 60% of "monthly base salary" from the time the Sickness and Accident benefits expire until the employee reaches age sixty-five provided the employee is medically qualified. The amount of Extended Disability benefits can be reduced by certain benefits payable under a separate GM retirement plan.

When Tinsley applied for Sickness and Accident benefits on March 8, 1982, the seven day waiting period began, and he was paid his full salary, based on the $1,850.00 monthly base salary he had been receiving since his January 1, 1982 transfer. From March 15, 1982 until March 13, 1983, Tinsley received Sickness and Accident benefits of $1,388.00, or 75% of his $1,850.00 Code 4 monthly base salary. During the twenty-five weeks commencing on March 15, 1982, Tinsley also received salary continuation payments which brought his monthly pay up to $1,850.00.

In March, 1983, Tinsley sought and was awarded Extended Disability benefits in the amount of $1,110.00, which was based on 60% of the $1,850.00 Code 4 monthly base salary, reduced by certain retirement benefits Tinsley was receiving.

Tinsley argues that the benefits calculation was incorrect because GM used the monthly base salary Tinsley was being paid at the time he applied for Sickness and Accident benefits ($1,850.00) instead of the $2,033.00 monthly base salary he had been paid right before the January 1, 1982 transfer. Tinsley's complaint and summary judgment motion are premised on an alleged ambiguity concerning the term "monthly base salary" as used in a handbook which summarizes GM benefits. Tinsley argues that the ambiguity should be construed against GM under principles

of state contract law, and that the term should be interpreted to mean "average monthly base salary," which Tinsley claims is the $2,033.00 figure paid him in his last months as a Code 5 employee. GM's motion for summary judgment seeks to justify its use of the $1,850.00 figure, by arguing that (1) its interpretation, as a fiduciary, of a welfare benefit plan provision must be upheld unless arbitrary and capricious, and (2) that no ambiguity exists as to the meaning of the term "monthly base salary." The court begins by examining the applicable law, and then the merits of GM's two arguments.

### Governing Law

■ According to the provisions of ERISA, an employee welfare benefit plan which provides benefits for sickness, accident or disability is governed by ERISA. 29 U.S.C. § 1002(1). Page 49 of the GM Employee Handbook (upon which Tinsley relies for his claimed ambiguity) states that the Sickness and Accident and Extended Disability programs fall under ERISA, and that conclusion is clearly correct in light of 29 U.S.C. § 1003(a). Even Tinsley admits the applicability of ERISA, as he seeks attorneys fees under 29 U.S.C. § 1132. Thus, this court must look to ERISA for the controlling principles of law in this case.

Title 29, United States Code, § 1144 provides that

(a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title ...

(c) For purposes of this section:

(1) The term "State law" includes all laws, decisions, rules, regulations or other State action having the effect of law, of any State.

This provision was clearly designed to preempt state law. *Jung v. FMC Corp.,* 755 F.2d 708, 714 (9th Cir.1985); *Helms v. Monsanto Co., Inc.,* 728 F.2d 1416, 1419-20 (11th Cir.1984); *Peckham v. Bd. of Trustees of the International Brotherhood of Painters,* 719 F.2d 1063, 1065 (10th Cir. 1983). Although not all-encompassing, this preemption is quite broad, *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1356 (9th Cir. 1985); *Lane v. Goren,* 743 F.2d 1337, 1339 (9th Cir.1984), and includes decisional law. *Jung,* 755 F.2d at 714; *Helms,* 728 F.2d at 1419-20. Courts have held that ERISA preempts causes of action based on breach of contract. *Blau,* 748 F.2d at 1356; *Lafferty v. Solar Turbines International,* 666 F.2d 408 (9th Cir.1982). *See also Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1215-16 (8th Cir.), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981) (ERISA preempts common law claim of tortious interference); *Francis v. United Technologies Corp.,* 458 F.Supp. 84, 86 (N.D.Cal.1978) (ERISA preempts state community property law). Thus, Tinsley's claim of breach of contract, and his attempt to apply common law principles of contract construction to the alleged ambiguities in the Employee Handbook, are inappropriate in this case. The court must consider Tinsley's claim in light of the principles of ERISA.

Under ERISA, a participant in or beneficiary of an employee welfare benefit plan may bring an action to recover benefits due him and to clarify his future rights to benefits. 29 U.S.C. § 1132(a)(1)(B). Tinsley's suit must be treated as one filed under this provision.

GM offers two basic grounds for summary judgment. The first is that GM, as a fiduciary administering the two benefit programs at issue here, did not act in an arbitrary or capricious manner in calculating Tinsley's benefits, and thus its interpretation of "monthly base salary" cannot be overturned. The second ground for summary judgment is that there is no ambiguity in the term as used in the welfare benefit plan. The court considers each of these grounds in turn.

### GM's Performance as Plan Fiduciary

GM is the administrator of the employee welfare benefit plan at issue here by virtue

of the fact that it is the named fiduciary of the plan. 29 U.S.C. § 1002(16)(A). GM is therefore a fiduciary, 29 U.S.C. § 1002(14)(A), and shoulders the burden for performing the fiduciary duties of 29 U.S.C. § 1104, including the duty to act "solely in the interests of participants ... and ... in accordance with the documents and instruments governing the plan...." In effect, Tinsley's suit claims that GM's interpretation of "monthly base salary" for purposes of computing Tinsley's benefits violated GM's fiduciary duty.

■ A federal court reviewing a decision of a plan trustee or fiduciary must uphold the trustee's decision unless it is arbitrary and capricious in light of the language of the plan. *Berg v. Bd. of Trustees, Local 705*, 725 F.2d 68, 70 (7th Cir.1984); *Wardle v. Central States, Southeast and Southwest Areas Pension Fund*, 627 F.2d 820, 824 (7th Cir.1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981); *Reiherzer v. Shannon*, 581 F.2d 1266, 1272 (7th Cir.1978). If the rules or the plan are susceptible to more than one reasonable interpretation, the court should not substitute its judgment for that of the trustee. *Jestings v. New England Telephone & Telegraph Co.*, 757 F.2d 8, 9 (1st Cir.1985); *Jung v. FMC Corp.*, 755 F.2d at 712; *Gaines v. Amalgamated Ins. Fund*, 753 F.2d 288, 289 (3d Cir.1985); *Reiherzer*, 581 F.2d at 1272.

■ The language of the welfare benefit plan defining Sickness and Accident benefits uses the phrase "75% of monthly base salary" in setting forth the formula for such benefits, while the Extended Disability provisions use "60% of monthly base salary." GM interprets this language to mean "the monthly base salary being paid at the time benefits are first requested." There is nothing arbitrary or capricious about this interpretation for at least three reasons. First, the uncontested affidavit of Alan C. Benden, Assistant Director of Life and Disability Insurance for GM, establishes that GM has so interpreted "monthly base salary" since benefits were first made available under the welfare benefit plan. A consistent interpretation of a plan provision tends to negate inferences of

arbitrariness and capriciousness. Second, other language in the plan indicates that "monthly base salary" is not an average, but is the current base salary received by the employee. In Part V of the Group Insurance Certificate issued by Metropolitan Life Insurance Company, attached as Exhibit A to the Benden affidavit, the plan provides:

> Any increase in the amount of the Employe's insurance due to a change in monthly base salary ... or salaried position classification shall become effective on the date of such change in the case of a change in monthly base salary or salaried position classification ... Any decrease in the amount of the Employe's insurance due to a change in monthly base salary ... or salaried position classification shall become effective on the first day of the calendar month next following the date of such change ... provided the Employe is actively at work on such first day....

If the phrase "monthly base salary" was intended to mean "average monthly salary," this plan language concerning the time that changes in benefits amount take place would be largely superfluous. The exhibits attached to the affidavit of Doris Gross, Supervisor of Salary Personnel Administration at GM's Marion, Indiana plant, exhibit clearly that Tinsley enjoyed a steady increase in salary over the twenty-five years he worked at GM. Because he was paid at different rates during different time periods, Tinsley's "average monthly salary" would vary with each pay check, as the numbers which produce the average would always change. Thus, an employee's benefits would change every pay day. Why, then, would the plan state the obvious concerning increases in the amount of benefits? If, however, the phrase "monthly base salary" means the monthly base salary being paid at the time the employee applies for benefits, as GM suggests, then a plan provision governing the time when benefit changes take effect makes more sense, as Tinsley's employment history indicates that changes in the monthly salary rate less frequently than every pay day.

The third and perhaps most persuasive proof that GM did not act arbitrarily or capriciously is that Tinsley ends up receiving *more* benefits under GM's formula than under the proposed "average monthly salary" formula. As GM's brief points out, Tinsley argues for an average monthly salary formula, but then does not take an average over Tinsley's many years with GM. Rather, Tinsley uses the $2,033.00 rate he was paid from July 1, 1981 to January 1, 1982. Quite simply, that is not an "average" at all, but rather an attempt to pick Tinsley's highest salary, which he received for only approximately 1/50 of the time he worked at GM, and get the highest possible amount of benefits. Rather, as the Doris Gross exhibit establishes, Tinsley's average monthly base salary over his entire time of employment is $937.91, and if the amount of time spent at a given base rate is disregarded so that the various base rates are simply averaged, the average is $1,140.44. If only the time since Tinsley became a Code 5 employee is considered, the average monthly salary is $1,151.58. If only Tinsley's last sixty months are considered, as required by one of the retirement benefit formulae, the average is $1,700.42. All of these averages are considerably less than the $1,850.00 monthly base figure used by GM in calculating Tinsley's benefits. By excluding consideration of earlier monthly salary rates, which would have to be included in any "average," GM's formula benefits the employee by not penalizing the employee for lower salaries earned in earlier years, and thus establishes GM's performance of its fiduciary duty. It is hard to see how GM can be acting arbitrarily when its formula gives Tinsley more benefits than Tinsley's formula.

The court therefore finds nothing to suggest that GM's interpretation of "monthly base salary" in the welfare benefit plan was arbitrary or capricous. Therefore, its interpretation of the phrase, and its application of that interpretation in calculating Tinsley's benefits, must be upheld.

## The Alleged Ambiguity

GM's second ground for summary judgment is that the alleged ambiguity in the plan cited by Tinsley is in fact not an ambiguity at all. Tinsley's source of the ambiguity is not the plan itself or the insurance policies which define the benefits under the plan. Rather, Tinsley looks to a GM Employee Handbook which describes the benefits available under the Sickness and Accident, Extended Disability, and Retirement plans offered to GM employees.

■ Tinsley's reliance on the Handbook is misplaced. On page 1 of the Handbook, in conspicuous italic print, is the following:

This booklet presents general information only and is designed to give you a broad picture of some of the added values of working with General Motors. Any reference to the payment of benefits is conditioned upon your eligibility to receive them. Each of these programs has its own terms and conditions which in all respects control the benefits provided.

At least two courts have stated that an employee cannot rely on language in a descriptive booklet when the booklet contains a disclaimer that the formal text of the plan controls. *See Anthony v. Ryder Truck Lines, Inc.*, 611 F.2d 944, 948 (3d Cir.1979); *Higgins v. Carpenters Health and Welfare Fund*, 524 F.Supp. 601, 607 (E.D.Pa.1981). The only case which might support Tinsley's attempt to rely on the Handbook, *Gould v. Continental Coffee Co.*, 304 F.Supp. 1 (S.D.N.Y.1969), was a pre-ERISA case which held that a summary booklet must not be misleading, and that any discrepancy between the booklet and plan must be construed in favor of the employee. However, no discrepancy exists between the GM Handbook and the plan. Both use the same "monthly base salary" language in describing the Sickness and Accident and the Extended Disability benefits of the plan. Therefore, *Gould* does not apply, and the disclaimer effectively prevents Tinsley from relying on the language of the booklet. Because Tinsley has shown no ambiguity in the terms of the plan itself, he cannot prevail in this case.

■ Even if the court was required to look to the language of the GM Handbook, it would find no ambiguity. Tinsley bases his claim of an ambiguity to the fact that the term "monthly base salary" is used at pages 29 and 30 in describing the benefits for sickness and accident and extended disability respectively. The ambiguity allegedly arises because the terms "maximum monthly base salary," "average monthly base salary" and "final monthly base salary" are used in pages 13, 14, 15 and 17 in describing various *retirement* benefits. However, Tinsley is attempting to compare apples and oranges by trying to compare the formulae for computing sickness and accident and/or extended disability benefits (the benefits at issue in this case) with the formulae for computing various retirement benefits.[1] There is no ambiguity here; the modifiers "maximum," "average" and "final" clearly make the number to be used in the retirement benefit calculation different from the number in the sickness and accident and extended disability benefit calculations. Because the Handbook uses the same language as the plan in describing the benefits at issue here, Tinsley's claim of an ambiguity completely lacks merit.

The extent to which Tinsley has stretched to make a case where none can be made becomes clearer upon close examination of the Handbook itself. While Tinsley may have parsed through the Handbook looking for references to "monthly base salary" without regard to the context in which they appear, he apparently missed the clear example of how disability payments are made which appears on page 33:

An employee age 37 earning a base salary of $2,000 per month with 11 years of service who becomes totally and permanently disabled would receive:

Salary continuation and sickness and accident benefits equal to $2,000 per month plus cost of living allowance for the first 6 months.

Monthly sickness and accident benefits of $1,500 (75% of salary) for the next 6 months, followed by:

Monthly extended disability benefits of $1,200 (60% of salary) until age 65. This amount would include disability benefits from other sources such as Part A and Part B supplementary retirement benefits and Social Security disability insurance benefits. Any Part B primary retirement benefits would be in addition.

Monthly total and permanent disability benefits payable for life under the Retirement Program.

Entire account balance under the Savings-Stock Purchase Program and the Employe Stock Ownership Plan.

This example makes two points clear: (1) the employee's current monthly base salary is used to compute benefits, not some "average;" and (2) monthly total and permanent disability benefits under the Retirement Program, as well as the Part A and Part B retirement benefits used in calculating extended disability benefits, are separate from (and therefore different from) Sickness and Accident and Extended Disability benefits, so that formulae for computing retirement benefits (and their component parts) cannot be compared. These two points clearly establish that Tinsley's interpretation of the Handbook and the various benefit formulae is incorrect, and that GM's interpretation is consistent with the Handbook and the plan. Therefore, GM is entitled to judgment as a matter of law.

For the reasons stated above, plaintiff's motion for summary judgment is hereby DENIED, and defendant's motion for summary judgment is hereby GRANTED.

---

**1.** Tinsley apparently believes that the formulae for retirement benefits are relevant because the extended disability benefits subtract certain retirement benefits from the "60% of monthly base salary" figure. However, the fact that retirement benefits are ultimately subtracted from the disability benefits does not mean that there must be any connection between the factors in the equation. Tinsley has offered absolutely no reason why the formulae should be considered "related," or why use of "monthly base salary" in one place and "maximum," "average" or "final monthly base salary" in another is in any way ambiguous when these phrases are describing different things.