**Erling W. ROCKNEY, Kenneth M. Knopf, Glendon K. Olson and Marvin E. Diers, Plaintiffs,**

v.

**PAKO CORPORATION, a Delaware corporation, a wholly-owned subsidiary of Delblo Enterprises (Minnesota), Inc., a Delaware corporation; Gerard M. Blohorn; Oliver A. Kimberly, Jr.; Robert Gauthier; William H. Alvord; Thomas J. Nicoski; and Does 1 through 10, inclusive, Defendants.**

Civ. No. 3–86–549.

United States District Court,
D. Minnesota,
Third Division.

April 20, 1988.

Denis E. Grande of Arthur, Chapman & McDonough, P.A., Minneapolis, Minn., for plaintiffs.

R. Scott Davies and Robert E. Woods of Briggs and Morgan, St. Paul, Minn., for defendants.

## ORDER

RENNER, District Judge.

Before the Court are the summary judgment motions of defendants Gerard M. Blo-

horn and Oliver A. Kimberly.[1] Following a hearing held on January 13, 1988, the Court requested additional briefing and took the matter under advisement. Based on the opinion which follows, summary judgment will be granted as to both defendants.

### FACTS

This is an action by four retired employees of Pako Corporation ("Pako") to collect benefits due them under two unfunded "Top Hat" retirement plans adopted and approved by Pako's board of directors in 1977 and 1981.

Plaintiffs are all former middle-to-upper level managers of Pako. All four are covered under the 1977 pension plan. Only plaintiffs Diers and Rockney are participants under the 1981 plan.

Pako is a Delaware corporation, incorporated in 1921 and has historically been engaged in the manufacture and marketing of photographic, graphic arts and x-ray processing equipment and film.

In October, 1980, Pako entered into a Merger Agreement with Delblo Enterprises (Minnesota), Inc. ("Delblo–MN").[2] As a result of the merger, Pako ceased to be a publicly held corporation but was, in its new form, obligated to fulfill the contractual obligations of the old Pako. Article V, paragraph 5.01 of the Merger Agreement.

Defendant Gerard Blohorn is a French citizen who was elected Chairman, a director and CEO of Pako post-merger. Blohorn has similar connections to numerous Delblo entities. He apparently never had a direct ownership interest in Pako and did not participate as an investor in its acquisition. At the same time, however, Blohorn testified that he made most important decisions regarding Pako and negotiated on behalf of the Company on matters associated with financing, refinancing and sales of the various Pako divisions which occurred between 1980 and the present.

Defendant Kimberly has been a seven per cent shareholder of Delblo–MN, and an advisor and confidante of Blohorn. Like Blohorn, Kimberly has been a Pako director since December, 1980. It appears that Kimberly was the individual who brought Pako to the attention of Andre Blohorn, Gerard's father, in the first step toward acquisition of Pako by Delblo entities.

On May 24, 1977, Pako's board of directors adopted Plan No. 1, a nonfunded pension plan. Defendants Blohorn and Kimberly were not, at that time, board members. The May, 1977 plan included the following language:

8.3 *Acquisition of Employer.*

Notwithstanding any future sale of a substantial amount of the shares of the Employer [Pako] or the sale of substantially all the assets of the Employer or any merger or other reorganization, *this Plan shall continue to be binding upon the Employer, any successor in interest to the Employer and all persons in control of the Employer or any successor*, and no transaction or series of transactions shall have the effect of reducing or cancelling the accrued rights and benefits of present Participants or the prospective rights and benefits of present Participants under this Plan unless consented to in writing by affected Participants.

(Emphasis added).

On June 3, 1981, Pako's board of directors adopted Plan No. 2, a supplemental pension plan for upper level management.

---

**1.** By Order dated January 19, 1988, this Court granted summary judgment in favor of corporate defendant Pako Corporation, and individual defendants Robert Gauthier, William H. Alford, and Thomas J. Nicoski on all counts of plaintiffs' complaint. Count II of the plaintiffs' Complaint, which purported to state a claim under State law, was dismissed with prejudice with respect to all defendants.

**2.** Delblo–MN is a subsidiary of Delblo Enterprises, Inc., a Delaware corporation ("Delblo"); Delblo is a wholly-owned subsidiary of Delblo Netherlands B.V., a Netherlands corporation, which in turn is a wholly-owned subsidiary of Delblo Netherlands N.V., a corporation incorporated in the Netherlands in 1980 by Andre Blohorn, Gerard's father. Neither Gerard Blohorn nor Kimberly knows who presently owns or holds the stock of Delblo Netherlands N.V.

By this time, defendants Blohorn and Kimberly were board members. They voted in favor of the plan.

Paragraph 9 of Plan No. 2 contains language similar to that contained in Plan No. 1 relative to individual "person in control" liability:

9. This Agreement shall be binding upon the parties hereto, their heirs, legal representatives or successors. More particularly, the Corporation agrees that notwithstanding any future sale of a substantial amount of the shares of the Corporation, or the sale of substantially all of the assets of the Corporation, or any merger or other reorganization, *this Agreement and its obligations shall continue to be binding upon the Corporation, any successor in interest to the Corporation, and all persons in control of the Corporation or any successor* and no transaction or series of transactions shall be undertaken that has or have the effect of reducing or canceling the rights or prospective rights of the Employee under this Agreement.

(Emphasis added).

Both Blohorn and Kimberly voted in favor of adopting Plan No. 2. Moreover, on June 3, 1981, both defendants, as part of a unanimous board decision, approved a resolution specifically emphasizing control person liability.

RESOLVED FURTHER, That it is the Board's intent that such Executive Supplemental Compensation and Retirement Agreement be fully binding upon the Corporation *and any successor in interest to the Corporation and all persons in control of the Corporation or any successor thereto and that no transaction or series of transactions shall be undertaken that has or have the effect of reducing or cancelling the rights or prospective rights of any officer or employee under the Plan.*

(Emphasis added).

Subsequently, the company encountered increasingly difficult financial circumstances. By early 1986, apparently out of economic necessity, the workforce was reduced, salaries were cut or frozen, and the company ceased paying bills on a regular basis. In March and April, 1986, plaintiffs were notified that the supplemental deferred compensation payments called for under Plans Nos. 1 and 2 would also be suspended.

There is no direct evidence suggesting that Blohorn and/or Kimberly were personally responsible for termination of plan payments. Defendants maintain that the decision to suspend payments was made by unidentified members of Pako's operational management and only thereafter were Blohorn and Kimberly informed of the decision. Although Blohorn claims he was never consulted about the decision, he concedes, however, that he had the power to reverse the decision. Blohorn deposition, pages 48 and 49.

Plaintiffs brought the instant action in June 1986. In March, 1987, Pako filed for bankruptcy; a reorganization plan was affirmed in July, 1987.

Plaintiffs' complaint asserts two counts. Count I alleges that Plan Nos. 1 and 2 qualify as plans covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, and that defendants' inability to make payments to the plaintiffs under the plans "breached the contractual agreements and obligations entered into between the plaintiffs and defendants." Complaint, para. 14. Count II is a pendent state law breach of contract claim making essentially the same allegations.

Plaintiffs agreed to entry of judgment dismissing Count II, the pendent state law claim, as preempted by ERISA. Plaintiffs also agreed to entry of judgment dismissing all claims against corporate defendant Pako and individual defendants Robert Gauthier, William H. Alvord and Thomas J. Nicoski.

Thus, all that remains for decision are plaintiffs' claims against individual defendants Blohorn and Kimberly based on their alleged personal liability for Pako's discontinuance of pension fund contributions.

Defendants move for summary judgment arguing that ERISA does not impose "con-

trol person" liability on individual corporate officers. Defendants also argue that the defendants cannot be held individually liable based on written contracts executed by plaintiffs and corporate defendant Pako.

Plaintiffs, in contrast, maintain that under certain circumstances ERISA specifically provides for individual corporate officer liability for unpaid contributions. In addition, plaintiffs would hold the defendants personally liable for said payments pursuant to the express language of Plans Nos. 1 and 2.

## ANALYSIS

Under Fed.R.Civ.P. 56(c), the Court is required to grant summary judgment

> if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is a genuine dispute of material fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

1. *Can individual controlling officers or shareholders be considered "employers" under ERISA, and thus liable for unpaid contributions?*

■ Plaintiffs contend that defendants Blohorn and Kimberly come within the meaning of "employer" under ERISA and are thus individually liable to plaintiffs for unpaid contributions.

Subchapter 1 of ERISA, which governs the type of ongoing pension contributions at issue here, defines "employer" as:

> any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan.

29 U.S.C. § 1002(5). "Person" is further defined as

> an individual, partnership. joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization.

29 U.S.C. § 1002(9).

The weight of authority clearly holds that where the corporate form has been ignored, controlling officers/shareholders cannot escape liability for unpaid contributions merely by relying on the basic principle of limited liability at the heart of corporate law.

For example, in *Alman v. Danin*, 801 F.2d 1 (1st Cir.1986), the Court affirmed the district court's finding of individual liability for unpaid contributions. In doing so, however, the circuit court noted that the individual defendants "had not respected [the corporation's] separate existence even minimally." *Id.* at 4. The corporation's board of directors had never formally met, there were no corporate records, and the company was grossly undercapitalized.

Numerous decisions, including that of the Eighth Circuit in 1984, echo *Alman's* basic proposition that where the corporate form has been ignored or where corporate officers act as alter-egos for the corporation, individual liability for unpaid ERISA contributions is appropriate. *Greater Kansas City Laborers Pension Fund v. Thummel*, 738 F.2d 926 (8th Cir.1984) (imposing joint and several liability upon an individual for his corporation's indebtedness to a union pension fund based on extensive evidence that a newly formed corporation was in fact the individual's alter ego); *Operating Engineers Pension Trust v. Reed*, 726 F.2d 513 (9th Cir.1984) (suggesting that an individual would be personally liable for unpaid contributions if there is little or no respect shown to the corporate identity of the corporation, recognition of the corporation would result in injustice to the litigants; and there was a fraudulent intent behind the corporation); *Amalgamated Cotton Garment & Allied Industries Fund v. J.B.C.*, 608 F.Supp. 158 (W.D.Pa.1984) (individual defendants not liable unless acting as "alter egos" of corporate entity).

Collectively, these decisions are of little help in deciding the pending motion. Here, plaintiffs do not assert that there is a factual basis to "pierce the corporate veil." Pako's board of directors met frequently, its Board acted by written consent and there were multiple meetings of the Company's pension or benefit committees. While plaintiffs vigorously argue that Blohorn and Kimberly are "controlling" persons, they nowhere assert that Pako is a sham corporation.

The lone Circuit Court to directly address the question facing this court—whether individual controlling officer/shareholders may be held liable for unpaid contributions as "employers" in the absence of facts suggesting abuse of the corporate form— holds squarely for defendants. *Solomon v. Klein*, 770 F.2d 352 (3rd Cir.1985).[3]

In *Solomon v. Klein*, the Court noted that there is "nothing in the legislative history to indicate that Congress intended to impose personal liability on a shareholder or a high-ranking officer of a corporation for ERISA contributions owed by the corporation." 770 F.2d at 354. In reaching this conclusion, the Court emphasized that ERISA omits an individual corporate officer from its definition of "person[s]" who are "employer[s]". The omission, in the Third Circuit's view, was an indication that Congress intended individual officers to be excluded from liability. District Courts in New York and Pennsylvania have used similar reasoning. *Solomon v.*

*R.E.K. Dress*, 670 F.Supp. 96, 98–100 (S.D. N.Y.1987); *Combs v. Indyk*, 554 F.Supp. 573 (W.D.Pa.1982). This Court, however, declines to do so.

Instead, the Court adopts what it considers to be the better reasoned view expressed by the district courts of Illinois and Massachusetts. *Gambino v. Index Sales Corp.*, 673 F.Supp. 1450 (N.D.Ill.1987); *Massachusetts State Carpenters Pension Fund*, 635 F.Supp. 9 (D.Mass.1984). *See also Upholsterer's Int'l Union Health and Welfare Fund Trustees v. Pontiac Furniture*, 647 F.Supp. 1053 (D.C.Ill.1986); *Rubenstein v. Tri–State Transport, Inc.*, 646 F.Supp. 1 (Mass.1984); *Alman v. Servall Mfg. Co.*, 6 E.B.C. 2031 (D.Mass.1984).

These decisions sanction the imposition of individual liability where controlling shareholders or officers have not only significant ownership interest, but also operational control over significant aspects of the corporation's daily functions. In so holding, these cases recognize that ERISA is part of a federal statutory scheme preempting state corporate law, including to some extent the traditional limitation on personal liability of corporate officers and shareholders.

Support for the argument is found by way of analogy to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, which defines "employer" and "person" nearly identically as does ERISA.[4] Reasoning that courts impose FLSA liability against certain controlling individuals, *see*

---

**3.** Several other circuit courts have rejected individual accountability for an employer's withdrawal liability under Title IV of ERISA. *DeBrecini v. Graf. Bros. Leasing, Inc.*, 828 F.2d 877 (1st Cir.1987), *cert. denied*, 484 U.S. 1064, 108 S.Ct. 1024, 98 L.Ed.2d 988 (1988); *Connors v. P & M Coal, Co.*, 801 F.2d 1373 (D.C.Cir.1986). Withdrawal liability is an employer's long term debt to a plan for any unfunded vested benefits attributed to its employees once the employer ceases its participation. 29 U.S.C. § 1381. Such liability is distinct from the issue facing this Court—liability for unpaid pension fund contributions under Title I of the ERISA. Indeed, the definition of employer contained in 29 U.S.C. § 1002(5), which is at the heart of the pending motion, is expressly applicable only to Title I of ERISA. Accordingly, neither *DeBrecini* nor *Connors* is controlling. Moreover, both decisions specifically reserved the precise issue

before this court. 828 F.2d at 880 n. 2; 801 F.2d at 1377.

**4.** Under ERISA, the term employer means "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 29 U.S.C. § 1002(5). Under the FLSA, the term employer includes "any person acting directly or indirectly in the interest of an employer in relation to an employee...." 29 U.S.C. § 203(d).

The term "person" is defined by ERISA, as "an individual, partnership, joint venture, corporation, mutual company...." 29 U.S.C. § 1002(9). The FLSA defines "person" as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a).

*e.g. Donovan v. Agnew,* 712 F.2d 1509, 1511 (1st Cir.1983) (corporate officer with operational control is an employer along with the corporation and is jointly and severally liable under FLSA for unpaid wages), the Massachusetts and Illinois district courts have seen fit to do the same with respect to ERISA.[5]

This Court adopts as its own, the lucid commentary of Judge Gunn in *Gambino.*

This Court is of course aware of the basic insulation from personal liability normally afforded individuals when they do business in corporate form. But the uniform judicial reading of the FLSA definition of "employer" (a definition, it will be remembered, whose "acting directly ... or indirectly in the interest of an employer" language is repeated in ERISA) has been that such a broad-sweep definition was intended to strip away that insulation where the corporation-controlling individual has opted to prefer the payment of other corporate debts to the payment of obligations running to corporate employees and given statutory recognition by Congress. Courts have implemented that intention under FLSA, and they should do no less under ERISA's substantively identical provisions.

673 F.Supp. at 1455.

In sum, the Court holds that an individual officer, director or shareholder is not an ERISA employer for purposes of Title I liability solely by virtue of his or her corporate title or ownership interest. However, ERISA's definition of employer is certainly broad enough to include an individual officer, director or shareholder exercising sole or principle control over a corporate employer. It is said individual's operational control over the corporation's decision to continue operations but refuse to pay out the required contributions, that justifies imposition of liability.

2. *Is there a dispute of material fact as to whether Blohorn and/or Kimberly exercised sufficient control to be considered "employers" for purposes of ERISA liability?*

In those Massachusetts and Illinois decisions recognizing that individuals exercising principal or sole control over corporate employers may be held responsible for their corporations' ERISA contributions, the evidence concerning operational control over pension fund decisions has been overwhelming. For example in *Gambino v. Index Sales Corp.,* 673 F.Supp. 1450, the Court granted summary judgment as to an individual's liability where it was undisputed that the individual defendant was the corporation's chief executive officer, had technical responsibility over and also carried out all of the corporation's labor relations, all negotiations with Trustees, all corporate operations and affairs, all corporate financial transactions and all matters relating to Trust fund obligations.

Similarly, in *Rubenstein v. Tri–State,* 646 F.Supp. 1, the court granted summary judgment as to an individual's liability where said individual owned 80% of the company, was its chief executive officer, hired new employees, spoke for the corporate entity in contacts with Fund, and signed and filed monthly reports with the Fund on the corporation's behalf.

In *Alman v. Servall Mfg. Co.,* 6 E.B.C. 2031, the court granted summary judgment without objection by defendant where defendant was the corporation's chief executive officer, principal shareholder and president. In those capacities, defendant controlled the corporation's entire financial op-

---

**5.** A recent New York federal district court decision rejects the FLSA analogy. *Solomon v. R.E.K. Dress,* 670 F.Supp. 96 (S.D.N.Y.1987). The case is unpersuasive for a number of reasons. First, the decision misstates the holding of *Donovon v. Agnew,* 712 F.2d 1509, suggesting mistakenly that is was an ERISA case; it was exclusively an FLSA case. More importantly, *Solomon v. R.E.K. Dress* incorrectly states that the FLSA definition of employer specifically mentions a shareholder-officer—a mistake providing the court with a false basis to distinguish the FLSA and ERISA definitions of employer. Finally, *Solomon v. R.E.K. Dress* relies in large part on *Connors v. P & M Coal, Co.,* 801 F.2d 1373, which addresses individual accountability for corporate withdrawal liability under Title IV of ERISA, a related, but clearly distinct question from that facing this Court.

eration, and acted on behalf of the company with regard to all benefit plans, including audits, ascertaining contributions and collections arrangements.

■ There is considerable support in the record for the conclusion that defendant Blohorn exercised significant control over Pako. He is a director, Pako's Chairman, and, since 1982, the company's chief executive officer. According to his own deposition, he makes the major decisions regarding Pako. Blohorn Deposition at pp. 42 and 46.

Blohorn holds similar positions of power in Pako's parent companies. He is a president and director of both Delblo–MN and Delblo Enterprises. Apparently, neither company has any employees; Blohorn cannot recall if either company has other officers or directors. Blohorn also serves as president of both Delblo Netherlands B.V. and Delblo Netherlands N.V. Clearly, a jury could find Blohorn to be a controlling person.

Significantly, however, plaintiffs offer no direct or indirect evidence that defendant Blohorn was personally involved in matters pertaining to administration of, or suspension of payments under the plans in question. Indeed, Blohorn specifically denies being informed of the decision prior to its implementation. Blohorn Deposition at pg. 48. Kimberly confirms that Blohorn delegated Pako's day-to-day operations to others. Kimberly deposition at pg. 65.

At best, defendant Blohorn concedes he had the power to reverse operational management's pension fund decisions. But such unexercised power is not, as a matter of law, sufficient to impose ERISA liability. There is simply nothing to suggest that defendant Blohorn acted individually, or on behalf of the corporation, to discontinue pension fund contributions. Without such evidence, there can be no statutory liability.

The case with respect to defendant Kimberly is even weaker. Not only does the record lack inferences to suggest that he had anything to do with the decision to terminate payments, there is nothing to suggest he had the power to reverse said decision if made by others. Plaintiffs

merely assert that Kimberly was a Delblo–MN shareholder, Blohorn's confidante, and, as such, an employer under ERISA. This is hardly sufficient to justify liability.

Accordingly, based on the foregoing, this Court finds no statutory basis for imposition of ERISA liability. Summary judgment on this theory will be granted with respect to both defendants. Plaintiffs' alternative theory of liability—reliance on the express language of Plans 1 and 2—does not compel a different conclusion.

3. *Does the express language of the relevant plans impose individual liability on defendants Blohorn and Kimberly because they are persons in control of the Employer?*

Paragraph 8.3 of the 1977 plan, and paragraph 9 of the 1981 plan purport to make any "persons in control of [Pako] or any successor" individually liable for pension plan contributions. Although the meaning of the disputed paragraph would appear unambiguous, both parties have extensively briefed factual matters relating to the parties' intent in entering the agreement.

Both sides agree that the successorship and person in control provisions were inserted in response to hostile third party overtures to acquire the company. Plaintiffs contend the plans were worded as broadly as possible to protect the interests of plan participants. According to Pako's then-president and CEO, Robert Galloway, the intent of the paragraphs was to make the successor corporation or the persons in control of the successor corporation, responsible for fulfilling plan obligations.

Defendants, in contrast, offer the testimony of attorney Don Carlson, the paragraph's drafter, to the effect that he did not purport to bind individual third parties who were not signatories to the agreement. In his view, the paragraphs were drafted to accomplish only the limited purpose of ensuring that any acquiring party, whether a corporation, a partnership or an individual, would continue to be liable to plan participants.

The Court need not rely on such parol testimony. A writing is ambiguous only if, judged by its language alone and without resort to parol evidence, it is reasonably susceptible of more than one meaning giving the words of the writing their plain and ordinary meaning. *Champale, Inc. v. Joseph S. Pickett and Sons,* 599 F.2d 857, 859 (8th Cir.1979). Where contract language is unambiguous, the fact that the parties disagree as to its meaning is not alone a reason to go beyond the words of the contract to determine the intent of the parties. *Medtronic, Inc. v. Catalyst Research Corp.,* 518 F.Supp. 946, 950 (D.Minn.), *aff'd,* 664 F.2d 660 (8th Cir.1981).

Here, the plain and ordinary meaning of the disputed paragraphs leaves no question but that the parties intended individuals in control to be jointly and severally liable, along with the corporation, for pension plan contributions.

Notwithstanding this clear contractual language, defendants offer several state statutory and civil contract defenses against imposing individual liability on the remaining individual defendants even assuming they are persons in control.

■ First, defendants make much of the fact that the disputed contracts are between the Company and plaintiffs; all plaintiffs apparently concede that there are no written or oral agreements between them and any of the individual defendants relating to payment of benefits.

Defendants cite elementary contract principles to the effect that an agreement cannot legally bind persons who are not parties to a contract. *See e.g. Rausch v. Julius B. Nelson & Sons,* 276 Minn. 12, 19, 149 N.W.2d 1, 6 (Minn.1967); 17 Am.Jur.2d Contracts § 294 (1964). Such basic contract principles dictate that the employee benefit plans do not bind individual third parties who were not signatories to the agreements and who have not expressly accepted liability through some other form of endorsement, guarantee or express undertaking.

An endorsement or guarantee to fulfill Plan No. 1 obligations clearly exists on behalf of corporate defendant Pako under the express terms of the October 21, 1980 Merger Agreement. Article V, paragraph 5.01 of the agreement, in pertinent part provides: "all obligations belonging or due to each of the Constituent Corporations shall be vested in, and become the obligation of the Surviving Corporation without further act or deed in the same manner as if the Surviving Corporation had itself incurred them."

Moreover, controlling Delaware General Corporation Law provides that, upon a merger, "all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to said surviving or resulting corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it." Del.Code Ann. Title 8, § 259. No similar statutory requirement imposes liability on individual controlling corporate directors officers or shareholders.

■ Plaintiffs maintain there is a dispute of material fact as to whether Blohorn and Kimberly were informed of the successor and person and control provisions of Plan No. 1 and whether they succeeded to or assumed obligations of the contract by reason of their involvement in the merger. There is precious little evidence in plaintiffs' favor.

Prior to the merger, then Pako president Robert Galloway recalls personally discussing plan obligations with Blohorn. In his conversations, Galloway remembers stressing that individuals sufficiently in control of the Company were liable for fulfillment of plan obligations. At the time, however, Galloway apparently believed that only Andrew Blohorn, Gerard's father, as Pako's sole shareholder, could fit within the "person in control" definition. Galloway does not remember ever telling Blohorn that Blohorn himself might be individually liable.

On September 4, 1980, Galloway also sent a letter to Blohorn and Blohorn's attorney, recommending continuation of the plan after merger in light of the fact that "these have all been reduced to contractual

agreements with the Officers, with a clear statement of successor assumption in the event of a change of ownership." Exhibit 15, page 4. While the letter flagged the successorship provisions, it did not specifically mention potential individual liability.

Several weeks earlier, on August 11, 1980, Galloway had sent a similar letter to Kimberly noting that Plan No. 1 clearly states the intent of any successor to assume responsibility for plan obligations. There is no evidence that Galloway personally discussed the possibility of control person liability with Kimberly.

Taking all inferences in plaintiffs' favor, a jury could conclude that defendants were apprised of the potential for imposition of successorship liability and directed to review the relevant contract provisions. Such a conclusion is by no means synonymous with either defendants' endorsement, guarantee or express undertaking of personal liability pursuant to the plan. Accordingly, there is no basis to impose personal liability on either defendant for the contract obligations under Plan No. 1.

■ With respect to Plan No. 2, it is undisputed that Blohorn and Kimberly in their role as Pako directors endorsed the principle of controlling person liability when they voted in favor of adopting Plan No. 2 at a June, 1981 board meeting. Indeed, the minutes of that board meeting show that the board unanimously adopted a resolution seconded by defendant Kimberly that expressly endorses control person liability.

These collective decisions, however, were made in defendants' agency capacity as board members. As with Plan No. 1, there is no independent written or oral agreement or other evidence to establish that Blohorn or Kimberly ratified or adopted corporate obligations under the plan or agreed to be personally liable for the pension plan contributions. Plaintiffs offer no

case law to suggest that defendants' board votes, taken collectively with other members, are alone sufficient to establish personal liability. This court will not take the opportunity to create such law.

■ The statute of frauds provides an alternative basis for summary judgment. Minn.Stat. § 513.01 provides in relevant part:

No action shall be maintained, in either of the following cases, upon any agreement, unless such agreement ... is in writing, and subscribed by the party charged therewith:

(1) Every agreement that by its terms is not to be performed within one year from the making thereof;

(2) Every special promise to answer for the debt, default or doings of another....

■ Plan No. 2 specifically provides, in paragraph 2 thereof, that Pako Corporation will "make such payments for fifteen years and until 180 monthly installment payments have been made...." In the event of the death of a plan participant, Pako agreed to make payments for a period of 180 months to the individual or Trust designated by the participant. Significantly, the last sentence of paragraph 4 of the Plan specifically provides, "[i]n the absence of any effective designation of a beneficiary, any such amounts becoming due and payable upon the death of the Employee shall be payable to his duly qualified executor or administrator." Clearly, performance under Plan No. 2 cannot possibly be completed with a year. Consequently, enforcement of Plan No. 2 as against Blohorn and Kimberly is barred by the Statute of Frauds.[6]

■ Plaintiffs do not directly counter defendants' contract defenses. Instead, plaintiffs assert that ERISA preempts reliance upon such defenses. In support of

---

**6.** Defendants also suggest that the statute of frauds applies because the purported individual promises are to answer for the debts of the corporation. This argument is easily dismissed. The contracts do not make the obligations of persons in control contingent upon non-performance by the corporation. Instead, the contracts impose joint and several liability upon the corporation and persons in control. The statute of frauds simply does not apply to such original undertakings. *J.J. Brooksbank Co. v. American Motors Corp.,* 289 Minn. 404, 184 N.W.2d 796 (1971).

this proposition, plaintiffs cite *Helms v. Monsanto*, 728 F.2d 1416 (11th Cir.1984) and *Tinsley v. General Motors Corp.*, 622 F.Supp. 1547 (N.D.Ind.1985). Both cases hold that ERISA preempts causes of action based on breach of contract. *Helms* goes on to state that the federal statute preempts not only state statutory law but also case law contrary to any provision of ERISA. 728 F.2d at 1420. *Tinsley* goes so far as to state that common law principles of contract construction are not applicable in an ERISA action when a court is faced with interpreting an ambiguous contract. 622 F.Supp. at 1550 (ERISA's preemption of state law "[a]lthough not all-encompassing ... is quite broad."). *See also Jung v. FMC Corp.*, 755 F.2d 708, 714 (9th Cir.1985) ("relevant provisions of ERISA have superceded state law, including decisional law, relating to an employee benefit plan"); *Southern California Retail Clerks Union & Food Employers Joint Pension Fund v. Bjorklund*, 728 F.2d 1262, 1265 (9th Cir.1984) (traditional contract law does not apply in full force in suits brought under ERISA).

This court is well aware that under ERISA's legislative scheme, the courts are to formulate rules of law to govern determination of issues in the employee benefit field. In fashioning such federal common law, the federal courts presume that state substantive law should be adopted as the federal rule of decision, except where state law is hostile or contradictory to the applicable federal statute. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728, 99 S.Ct. 1448, 1458–59, 59 L.Ed.2d 711 (1979). Thus,

> [In] formulating these laws courts must be guided by the general policies underlying ERISA. The general objective of this Act is to increase the number of individuals in employer-financed benefit plans. Congress wanted to assure that those who participate in the plans actually receive the benefits they are entitled to and do not lose these as a result of unduly restrictive provisions or lack of sufficient funds.

*Helms*, 728 F.2d at 1420.

None of the cases cited by plaintiffs unequivocally hold the statute of frauds inapplicable in the ERISA context; none suggest that non-parties to a contract can be bound individually without a written or oral agreement or some act constituting an endorsement, guarantee or undertaking.

Ignoring these "technical contract defenses," as plaintiffs refer to them, would, on the facts of the instant case, enable plan participants to pursue benefits they claim they are owed. But that fortuity alone does not compel abandonment of long standing contract principles.

Accordingly, based on the foregoing, the arguments and briefs of counsel, and a review of the entire file and record, IT IS HEREBY ORDERED that defendants' motion for summary judgment is granted, and plaintiffs' complaint is in all respects dismissed.

LET JUDGMENT BE ENTERED ACCORDINGLY.